**UNITED STATES of America,**
**Plaintiff,**

v.

**Frank Leonard WORTMAN, Elmer Sylvester Dowling, Edward Wortman, George Frank, Gregory Moore, and Sam Magin, Defendants.**

**Cr. No. 19199.**

United States District Court
E. D. Illinois.

Oct. 27, 1960.

188

C. M. Raemer U. S. Atty., East St. Louis, Ill., for United States.

Morris A. Shenker, St. Louis, Mo., for defendants Frank Leonard Wortman and Elmer Sylvester Dowling.

Saul E. Cohn, East St. Louis, Ill., for defendant Edward Wortman.

Robert J. O'Hanlon, St. Louis, Mo., for defendant George Frank.

Norman S. London, St. Louis, Mo., for defendant Gregory Moore.

Ray Foreman, Danville, Ill., for defendant Sam Magin.

JUERGENS, District Judge.

A nine count indictment was returned against the defendants, Frank Leonard Wortman, Elmer Sylvester Dowling, Edward Wortman, George Frank, Gregory Moore and Sam Magin.

Counts I, II and V of the indictment charge that the defendant Frank Leonard Wortman did wilfully and knowingly attempt to evade and defeat a large part of income tax due and owing by him and his wife to the United States of America for the years 1953, 1954 and 1955.

Counts III, IV and VI charge the defendant Elmer Sylvester Dowling with having wilfully and knowingly attempted to evade and defeat a large part of the income tax due and owing by him and his wife to the United States of America for the years 1953, 1954 and 1955.

Counts VII and VIII charge that the defendant Gregory Moore did wilfully and knowingly aid and assist in and produced, concealed and advised the preparation and presentation to the District Director of Internal Revenue at Springfield, Illinois, of false and fraudulent partnership returns of income.

Count IX is a conspiracy count and charges that all six of the defendants did unlawfully, wilfully and knowingly combine, conspire, confederate and agree together to violate certain enumerated laws of the United States.

All of the defendants have filed their motion to dismiss the indictment based on the allegation that the Government has engaged in such efforts at publicity which will result in prejudice to the defendants and also on the grounds that the indictment is insufficient.

The defendants, Dowling, Magin, Moore and Frank, have filed their separate motions electing to be tried in the districts of their residence at the time of the alleged commission of the offenses and their further motions requesting that the motions filed herein be transferred to the districts of their residence.

Each of the defendants has filed his separate motion to secure the names of the grand jurors who served on the grand jury drawn on June 15, 1959.

Each defendant filed his separate motion to dismiss the indictment based on an alleged improper grand jury.

Each of the defendants filed his separate motion for inspection and discovery under Rule 16, 18 U.S.C.A.

Each defendant filed his motion for production and inspection under Rule 17(c). Subpoenas were issued pursuant to the motion. The United States has filed its motion to quash the subpoenas.

The defendants have each filed a separate motion for severance.

The defendants, Frank Leonard Wortman and Elmer Sylvester Dowling, filed their joint motion for bill of particulars. Defendant Gregory Moore filed his separate motion for bill of particulars. All defendants filed their motions for bill of particulars as to Count IX of the indictment.

The defendants, Magin, Frank, Moore and Edward Wortman, filed their separate motions to dismiss the indictment because they had been called as witnesses before the grand jury and also filed their separate motions to suppress because of testimony given before the grand jury.

The defendants, Magin, Moore, Frank and Edward Wortman, filed their motions to inspect the grand jury minutes.

In support of their joint motion to dismiss the indictment, the defendants allege that (1) the Government, by and through its officers, has engaged in such efforts at publicity, calculatedly prejudicial to the defendants, that it has made it impossible for them to secure a fair trial; (2) each count of the indictment fails to state facts sufficient to constitute an offense against the laws of the United States; (3) it appears upon the face of each count of the indictment that no offense was committed by any of these

defendants against the laws of the United States; (4) the indictment fails to state facts with sufficient certainty and definiteness to enable the defendants to plead the judgment of this Court in bar of further prosecution; (5) the indictment is in other respects insufficient. By supplement to the joint motion to dismiss the indictment, the defendants assert that the overt acts in the substantive counts of the indictment, alleging an attempt to evade taxes, are alleged in the disjunctive rather than the conjunctive and that consequently the indictment is insufficient in that it is in this respect uncertain and indefinite.

Supplementing their motion to dismiss the indictment for the reason that the Government has engaged in causing the publication of publicity adverse to the defendants, the defendants have filed a number of photostatic copies of news articles appearing in the St. Louis Post-Dispatch, the St. Louis Globe-Democrat and the East St. Louis Journal.

At the oral argument on the motions, newspaper reporters from the various newspapers testified concerning the source of the information which appeared in the various news articles in their respective newspapers. Examination of these witnesses utterly failed to support the defendants' contention that the news articles, which they allege are prejudicial, were inspired by the Government or any of its agents. Some small part of the information published was obtained by reporters through discussions with various investigating officers over a period of years.

Information concerning the length of time that the Internal Revenue Service had been investigating the conduct of the defendants was obtained from an official of the Internal Revenue Service. This was, however, the only direct information which the reporters testified was received directly from agents of the Government. Such release of information can hardly be deemed to have been an engagement at publicity which would

be calculated to prejudice the defendants at the trial and to attempt to deny them a fair trial.

The Court has examined the publications and finds that the conduct of the defendants has been discussed in the various newspapers printed in this area. Many of these articles have been other than flattering. However, the Court finds that the publications do not have a sufficient bearing on the charge here as would result in causing a prejudice to the rights of these defendants.

■ Generally in items 2, 3, 4 and 5 in support of their motion to dismiss, the defendants allege that the indictment fails to state sufficient facts to constitute an offense against the United States; that the indictment fails to show that an offense was committed by any of the defendants; that the indictment fails to state facts with sufficient certainty which would enable the defendants to plead the judgment of this Court in bar of further prosecution; and that the indictment is otherwise insufficient.

■ Rule 7(c) of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., provides in pertinent parts as follows:

"* * * The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * *"

This rule is designed to simplify indictments by eliminating unnecessary phraseology. Nevertheless, it does not, nor was it intended, that this rule should alter or modify the formal functions and requirements of an indictment. Every essential element of the offense sought to be charged in an indictment must still be alleged. Wilson v. United States, 5 Cir., 158 F.2d 659. It is not necessary for the indictment to allege mere matters of evidence; however, sufficient facts must be alleged to apprize the accused of the crime charged against him with sufficient certainty as will enable him to make his defense and avail himself of a conviction

or acquittal for protection against a subsequent prosecution for the same offense. Every essential ingredient of the offense must be alleged with precision and certainty. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418. An examination of the indictment in the light of the sections of the statute alleged to have been violated discloses that the charges made in the indictment substantially follow the statute, which embodies all of the elements of the crime. The indictment further sets out the alleged acts constituting the offense. Each count states facts sufficient to give notice to the defendants of the crime against which they are to defend. The facts alleged are sufficient to give this Court jurisdiction, and sufficient facts are alleged to enable the defendants to plead the judgment in this cause as a defense to a further prosecution for the same offense.

The defendants further assert in their supplement to the joint motion to dismiss the indictment that the overt acts in the substantive counts of the indictment are alleged in the disjunctive rather than in the conjunctive and are, therefore, insufficient.

■ It is true that where a count states two or more separate offenses, it is duplicitous and faulty. According to the authorities, when a statute denounces several things joined disjunctively with "or," as a crime, the pleader, in drawing an indictment, should connect them by the conjunctive "and," and under such an indictment guilt may be established by proof of any one of the things conjunctively charged. The Court has examined the indictment and the statutory provisions upon which the indictment is based and finds that the indictment does not join two prohibited purposes alleged in the statute by a disjunctive. The substantive counts of the indictment charge that the defendants named in Counts I, II, III, IV, V and VI did "wilfully and knowingly attempt to evade and defeat ๛ large part of the income tax due and

owing." Counts VII and VIII charge that the defendant named therein "did wilfully and knowingly aid and assist in, and procure, counsel and advise the preparation and presentation to the District Director of Internal Revenue at Springfield, Illinois, of a false and fraudulent partnership return of income * * *" Only one crime is charged in each of the substantive counts. The argument of the defendants that there is more than one crime charged in the indictment, which are joined by the disjunctive, is without merit.

The defendants' joint motion to dismiss the indictment must be denied.

The defendants, Gregory Moore, George Frank, Sam Magin and Elmer Sylvester Dowling, have filed their election to be tried in the district of their residence at the time of the alleged commission of the offenses with which they are charged in the indictment.

This election is based on the provisions of Section 3237, Title 18 U.S.C.A., which provides in pertinent parts as follows:

"§ 3237. Offenses begun in one district and completed in another

"(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves.

"(b) Notwithstanding subsection (a), where an offense involves use of the mails and is an offense described in section 7201 or 7206(1)

(2), or (5) of the Internal Revenue Code of 1954 (whether or not the offense is also described in another provision of law), and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may upon motion filed in the district in which the prosecution is begun, elect to be tried in the district in which he was residing at the time the alleged offense was committed: * * * ."

The evidence established that the defendant Gregory Moore resides in the Eastern District of Missouri and was residing in the Eastern District of Missouri at the time the alleged offenses were committed; that the defendant George Frank resides in the Eastern District of Missouri and was residing in the Eastern District of Missouri at the time the alleged offenses were committed; that the defendant Sam Magin resides in the Southern District of Illinois and was residing in the Southern District of Illinois at the time the alleged offenses were committed; that the defendant Elmer Sylvester Dowling resides in the Southern District of Illinois and was residing in the Southern District of Illinois at the time the alleged offenses were committed.

Count III of the indictment charges the defendant Elmer Sylvester Dowling with having violated Section 145(b), Title 26 U.S.C. (Internal Revenue Code of 1939). Counts IV and VI charge the defendant Elmer Sylvester Dowling with violations of Section 7201, Title 26 U.S. C. (Internal Revenue Code of 1954).

■ Section 145(b), Title 26 U.S.C. (Internal Revenue Code of 1939), although not specifically enumerated in Section 3237, above set out, would appear to be included therein. The offense set out in Section 145(b) is also contained in Section 7201; and, therefore, the violation of Section 145(b) of the 1939 Code would also be included in the provisions of Section 3237 pertaining to the election to be tried in the district of

residence. The violation charged in Count III of the indictment against Elmer Sylvester Dowling should be treated in the same manner as the violation charged against the defendant Dowling in Counts IV and VI.

Counts VII and VIII charge the defendant Gregory Moore with violations of Section 7206(2), Title 26 U.S.C.

Count IX of the indictment is a general conspiracy count and alleges violation of Section 371, Title 18 U.S.C.A.

■ The obvious intent of Congress in passing paragraph (b) of Section 3237 was to permit a defendant to be tried in the district of his residence, thus avoiding the necessity of a defendant, who is charged with a violation of the Internal Revenue laws, having to travel great distance to defend a charge under these sections. The Congress apparently did not provide the courts with discretion in determining the facts or circumstances under which a transfer would be justified; rather, Congress intended that defendants be given the absolute right to be tried for alleged violation of the sections enumerated in paragraph (b) of Section 3237 in the district of their residence regardless of the distance involved.

■ The situs of the trial in the Southern District of Illinois is approximately one hundred miles from the residence of the defendant Elmer Sylvester Dowling. The situs of the trial in the Eastern District of Illinois is approximately nine miles from the defendant's residence. The United States District Court for the Eastern District of Missouri (St. Louis) is but a few miles from the place of holding court in East St. Louis in the Eastern District of Illinois. However, inasmuch as the courts do not have any discretion in the matter, the Court has no alternative but must transfer for trial those counts of the indictment charging violation of the sections enumerated in paragraph (b) of Section 3237.

Section 3237(b), Title 18, is limited to violations of the sections enumerated therein and does not require transfer of a cause involving the violation of Section 371, Title 18 U.S.C. Section 3237 (b), Title 18, does not require the conspiracy charge to be transferred even though the conspiracy may have been in furtherance of a violation of the offenses enumerated therein. If Congress had intended that conspiracies to violate the enumerated sections be also transferred to the district of residence upon request of the persons so charged, it could have said so.

The defendants have also filed their motions requesting that the motions directed against the indictment be transferred to the districts of their residence.

The defendants being entitled to be tried in the districts of their residence at the time of the commission of the alleged offenses, the motions directed against the counts of the indictment which have been transferred should also be transferred to the respective districts for trial.

In accordance with, and because of, the foregoing, this Court did at the time of the oral arguments enter its order transferring Counts III, IV and VI and the motions pertaining thereto for hearing and trial to the Southern District of Illinois, Counts VII and VIII and the motions pertaining thereto for hearing and trial to the Eastern District of Missouri, and retained jurisdiction of Count IX of the indictment and all motions relating thereto.

■ Each of the six defendants filed a separate motion requesting the Clerk of the United States District Court for the Eastern District of Illinois to furnish to the defendants a complete list of names of all grand jurors and their addresses, drawn under order of June 15, 1959, for service at East St. Louis, Illinois, July 13, 1959, and further requested the names and addresses of those jurors who served on that grand jury.

The defendants ordinarily would not be entitled to this information. The Government in its answer to the motion took a passive attitude to the request and made no objection to supplying the information. The defendants were supplied with the requested information by the United States Attorney at the hearing on the motions.

■ The defendants have each filed separate motions to dismiss the indictment and each count thereof, alleging as grounds therefor the following:

"1. The indictment was not returned by a legally constituted grand jury.

"2. The Grand Jury which returned the indictment was an illegal body.

"(a) The names of the persons serving as jurors, who returned the indictment, were not publicly drawn from a jury box into which the Jury Commissioner and the Clerk or his deputy, had previously and alternately placed one name in the jury box without reference to party affiliation until the box contained at least Three Hundred (300) names, or such larger number of names as determined by the Court, as required by law.

"(b) The names of the persons serving as jurors, who returned the indictment, were not publicly drawn from a box as to which, the Jury Commission determined that at the time of the drawing of the Grand Jury there were at least Three Hundred (300) names in the box of qualified jurors, as required by law.

"(c) The names of the persons serving as jurors, who returned the indictment, were not publicly drawn from a box containing the names of not less than Three Hundred (300) qualified persons at the time of such drawing, as required by law.

"(d) The names of the persons serving as jurors, who returned the

indictment, were not publicly drawn from a box of qualified jurors so as to insure the selection of Grand Jurors without the exercise of discretion, power of choice or arbitrary acts by anyone, as required by law.

"(e) The names of the persons serving as jurors were arbitrarily and capriciously selected by the Clerk and jury commissioner.

"(f) The names of the persons serving as jurors were selected by the clerk and jury commission from a small undefined territorial portion of the Eastern District of Illinois, without any legal authority to make such selection.

"(g) The names of the persons contained in the jury box were not qualified jurors chosen by the jury commission consisting of the Clerk and the jury commissioner, but were all chosen by the clerk only.

"3. The Jury Commission failed to follow the prescribed statutory requirements in the selection of persons from which the Grand Jury would be chosen.

"4. Such defects in the institution of the prosecution resulted directly from the acts of the Jury Commission, the particulars of which are set out in the affidavit attached hereto and made a part hereof.

"5. The defendant has been denied his lawful and statutory right to challenge grand jurors as drawn or empaneled, by fiat or order of the United States District Court for the Eastern District of Illinois, and by action of the Clerk of said court, by refusing to reveal such names after having returned an indictment against this defendant."

The defendants seek to fortify the motions by an affidavit of Bohlen J. Carter, the jury commissioner, which they allege shows the means and method by which the grand jurors were selected and that the method of selection was not in conformity with the requirements specified in the statute for the selection of jurors and, therefore, the grand jury was improperly drawn. The affidavit referred to and relied on by the defendants was executed on the 7th day of May, 1959, and filed with the Clerk of this Court on the 8th day of May, 1959. The grand jury which returned the indictment here under attack was drawn pursuant to an order of Court on the 15th day of June, 1959. The affidavit could have little bearing on the method of selection followed by the Jury Commissioners in selecting the grand jury which returned this indictment.

Douglas H. Reed, Clerk of this Court, and Bohlen J. Carter, Jury Commissioner, the Jury Commission at the time the grand jury was drawn, testified regarding their actions in selecting the grand jury which returned this indictment.

Douglas H. Reed testified he was the Clerk of the United States District Court for the Eastern District of Illinois and a member of the Jury Commission at the time the grand jury here under attack was selected; that the names of the prospective jurors were secured by the Jury Commission by sending out requests to various persons whose names and reputations were known to the witness or the Jury Commissioner; that generally a form letter was attached, setting forth the standards required of jurors; that on occasion names were given by close acquaintances of the witness without the questionnaire first having been sent and that these names were received from persons whom the witness knew to be qualified to submit names and who were familiar with the requirements of jurors; that when it appeared from the answered questionnaire that an individual was infirm or had some physical or mental deficiency or there was some cause which would render him or her unfit as a juror, such name was not placed in the jury box; that upon re-

-ceiving the names of qualified jurors, this witness and the Jury Commissioner placed the names received in the jury box; that he never excluded anyone as a juror; that there was no restriction contained in the order pursuant to which this grand jury was drawn and that the grand jurors were drawn from the entire district; that there were more than 300 names in the jury box; that he always insisted that the Jury Commissioner be present when the names for a jury were drawn; that four years ago all new names were placed in the jury box in order to insure that the box was current.

Bohlen J. Carter, Jury Commissioner, testified that he had served as Jury Commissioner until Douglas H. Reed had left office and that he was serving as Jury Commissioner at the time the grand jury here under attack was drawn; that he became a Jury Commissioner in 1946; that he did not check the names in the jury box upon taking office but that he had checked the names contained in the box prior to June 12, 1959; that there were never less than 300 names in the box at any time; that he had sent out letters to various people, asking for juror names; that these names were received and added to the box from time to time and on occasion he had supplied names personally. This witness further testified that the affidavit, which he had executed and which was referred to by the defendants, had been prepared by Ray Foreman, attorney for the defendant Sam Magin, and had been presented to him for his signature; that he had read the affidavit but at the time was in a hurry and had not read it as closely as he should; that he had signed the affidavit too hastily; that subsequent to executing the affidavit, he had checked more closely and found that statements concerning the distances and number of cards contained in the box were incorrect. He further testified that the affidavit was made prior to the date that the jury here under consideration was drawn and did not relate to the method or the means by which this jury was drawn.

The manner of drawing the names of grand jurors is prescribed by Section 1864, Title 28 U.S.C.A., which provides in pertinent parts as follows:

"The names of grand and petit jurors shall be publicly drawn from a box containing the names of not less than three hundred qualified persons at the time of each drawing.

"The jury box shall from time to time be refilled by the clerk of court, or his deputy, and a jury commissioner, appointed by the court.

\* \* \* \* \* \*

"The jury commissioner and the clerk, or his deputy, shall alternately place one name in the jury box without reference to party affiliations, until the box shall contain at least 300 names or such larger number as the court determines."

Contrary to the defendants' assertions, the evidence was conclusive that the jury box contained at least 300 names of qualified jurors at the time this grand jury was drawn; that the names of the persons serving as jurors were properly drawn; that the persons serving as jurors were not in any way arbitrarily and capriciously selected by the Clerk and the Jury Commissioner; that the jurors were selected from the entire district and not from a small undefined territorial portion of the district as the defendants charge; that the names of the persons contained in the jury box were chosen by the Jury Commission; that in selecting the grand jury the Jury Commission followed the statutory requirements in making the jury selection.

In these motions the burden to establish that the jury officials were derelict in the performance of their duty rests with the defendants. United States v. Brandt, D.C., 139 F.Supp. 362. Not only have the defendants failed to sup-

port this burden, but they have failed to show by any evidence that the Jury Commission did not, in fact, comply with the requirements of the statute. Accordingly, the motion to dismiss, premised on the illegality and insufficiency of the grand jury, will be denied.

The defendants have filed separate but identical motions for discovery and inspection pursuant to Rule 16, Title 18 U.S.C.A.

In these motions they request that the Government be ordered to produce and to permit the inspection and copying, before trial of this cause, all books, papers, documents and objects, obtained from or belonging to the defendants or obtained from others by seizure or by process, stating as reason therefor that the materials requested are material to the preparation of the respective defendants' defense.

The Government has no objection to the Court setting a time and place so that all defendants may examine for a reasonable time all books, papers, documents and objects, belonging to the defendants, which have been obtained by seizure or process. But the Government objects to the motions insofar as they pertain to all books, papers, documents and objects obtained from third parties by seizure or by process.

The Government's objection is based on the ground that the motions are so broad that they cover all evidence that it has in its possession and do not designate documents requested; that the motions are blanket requests and amount to nothing more than a fishing expedition whereby the defendants seek to obtain, prior to trial, all evidence the Government has concerning the case.

▉ Rule 16 of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., provides:

"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable."

The Advisory Notes of the Committee on the Rules point out that it is very doubtful under the existing criminal law that discovery is possible. However, courts have granted a defendant the opportunity to inspect impounded documents belonging to him. The Rule is a restatement of this procedure.

"In addition, it permits the procedure to be invoked in cases of objects and documents obtained from others by seizure or by process, on the theory that such evidential matter would probably have been accessible to the defendant if it had not previously been seized by the prosecution. The entire matter is left within the discretion of the court."

Rule 16 provides for the discovery of documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, after a showing that the request is reasonable and that the items sought may be material to the preparation of the defendant's case. United States v. Louie Gim Hall, D.C., 18 F.R.D. 384.

▉ Before the defendants are entitled to inspection and copying or photographing of designated books, papers, documents, etc., there must first be a showing that the items requested are material and that the request is reasonable; and in order to make such a showing something more is required under the rules than the mere allegations on the part of the defendants. The motions do not designate any documents or things but are naked requests for all documents. The defendants have made no showing

that their requests are reasonable as is required by the rules.

 Further, as indicated by the Rules Committee, documents or things obtained from others by seizure or process are made available on the theory that such evidential matter would probably be accessible to the defendants if it had not previously been seized by the prosecution. Here the documents seized from third parties have been returned to them, so that the request does not come within the theory of the rule as disclosed by the Rules Committee.

 The defendants seek to have the door opened in order to discover the Government's evidence and the details of the Government's case. They are not entitled to such evidence except upon a showing that the ends of justice cannot otherwise be served. There has been no such showing. United States v. Taylor, D.C., 25 F.R.D. 225.

The Government does not object to producing for inspection and copying those documents obtained by seizure or process, belonging to the defendants, and the motions will be granted as to those items because of such consent.

As to those books, papers, documents and objects obtained from or belonging to others, the motions will be denied for the reasons above stated.

Each of the defendants has filed his separate motion for severance, alleging in support thereof the following grounds:

1. The jury will have insurmountable difficulty in distinguishing the alleged acts of this defendant from the alleged acts of his co-defendants.

2. Evidence in this cause may be introduced by the Government which may be inadmissible against this defendant, but which may be admissible against one or more of his co-defendants, all to the prejudice of this defendant.

3. Evidence may be introduced by his co-defendants, which would be inadmissible against this defendant in separate trial, to the prejudice of this defendant.

4. This defendant, as well as his co-defendants, will obtain a fair and more impartial trial if he is tried alone.

5. There is a misjoinder of defendants and offenses in the indictment.

All of the defendants, except the defendant Frank Leonard Wortman, have alleged additional grounds in support of their motions as follows:

6. Defendant Frank Leonard Wortman has been convicted of a felony, and for this reason this defendant could not obtain a fair and impartial trial unless his trial is separate from Frank Leonard Wortman's trial.

7. A continued mass of publicity, some of which has been inspired by the plaintiff's prosecuting officials as to the charges in this indictment, the investigation connected with this indictment and the criminal connections and activities of Frank Leonard Wortman, make it impossible for this defendant to obtain a fair and impartial trial while joined with Frank Leonard Wortman.

Rule 14 of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., provides:

"If it appears that a defendant or the government is prejudiced by a joinder of offenses, or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

 When an application for a severance is made by a defendant under Rule 14, it is addressed to the discretion of the court. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101.

 In deciding such application the court must determine whether the alleged prejudice to the defendants in being joined and tried with other defendants overbalances possible prejudice to the Government which might result from a

198

separate trial. United States v. Dioguardi, D.C., 20 F.R.D. 10.

▆▆▆▆ Where proof of the charges against all the defendants is largely dependent upon the same evidence and the alleged acts are of the same or similar character, severance should not be granted except for the most cogent reasons. A trial of many defendants can be conducted with care and decorum so that the court can place whatever safeguards commend themselves in its effort to afford each defendant a separate and impartial consideration of his case. By exercising care in charging and marshaling evidence at the end of the trial, the judge can materially aid the jury in successfully considering each defendant separately. United States v. Bonanno, D.C., 177 F.Supp. 106. The fact that one defendant has a prior felony conviction is not grounds for a severance as to his co-defendants. United States v. Dioguardi, D.C., 20 F.R.D. 10.

Joinder of offenses and of defendants is prescribed by Rule 8 of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., which provides as follows:

"Rule 8. Joinder of Offenses and of Defendants

"(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

▆▆▆▆ Where two or more defendants are indicted for a joint transaction, it is inadvisable to split up the case into many parts for separate trials, in the absence of very strong and cogent reason therefor. This is especially true in conspiracy charges from the very nature of the case. Davenport v. United States, 9 Cir., 1958, 260 F.2d 591.

The Court has meticulously examined the defendants' reasons in support of their motions for severance and finds that the reasons are insufficient under the circumstances of the case to justify a severance. A severance is unnecessary to avoid prejudice of the defendants. At the trial of the cause the trial judge may adequately guard against the charges made by these defendants, if in fact they are true, by properly instructing the jury concerning the evidence as it is admitted. Discretion must be exercised in such matters so that over-all justice may be done, and in the exercise of that discretion the Court must in the interest of justice deny the motions of severance of defendants as requested.

The defendants, Frank Leonard Wortman and Elmer Sylvester Dowling, filed their motion for bill of particulars as to Counts I, II, III, IV, V, VI and IX. Since Counts III, IV and VI have been transferred to the United States District Court for the Southern District of Illinois, the bill of particulars requested as to Counts III, IV and VI will not be considered by the Court because the motions pertaining to these counts have also been transferred.

The defendant Gregory Moore filed his motion for bill of particulars as to Counts VII, VIII and IX. This motion for bill of particulars pertaining to Counts VII and VIII will be transferred to the United States District Court for the Eastern District of Missouri for consideration and will not be considered by this Court.

The remaining defendants filed motions for bill of particulars, asking that Count IX of the indictment be made more definite and certain.

The motion for bill of particulars as pertains to Counts I, II and V asks as follows:

"The movants pray that the charges and allegations in Counts I, II, III, IV, V and VI of the indictment be ordered made more specific and certain by setting forth in the bill of particulars for each count:

"(a) The books and records which the plaintiff alleges that each defendant caused to be maintained in a false and misleading manner.

"(b) In what respects such books and records are allegedly false and misleading.

"(c) The assets which the plaintiff alleges were concealed by each defendant.

"(d) How these assets were allegedly concealed.

"(e) The sources of income alleged to be covered up and amount and nature.

"(f) How the amounts, nature and sources of income were allegedly covered up.

"(g) The items on the tax return for the year involved alleged to be false and misleading.

"(h) If the plaintiff is computing net income under Section 41 of the Internal Revenue Code, state the means of computation, that is, whether the computation is based on net worth, unexplained bank deposits, expenditures, or by another method, for each year and each defendant.

"(i) The type and amount of each deduction against claimed total gross income allowed and disallowed in computing the alleged net income.

"(j) The nature and kind of each item, together with its source, which is alleged by plaintiff to constitute the total gross income of these defendants.

"(k) The nature of the records or documents which will be relied on to show the defendants' total gross income as alleged by the plaintiff.

"(l) How the filing of income tax returns at Springfield, Illinois, within the Southern District of Illinois, was done or accomplished within the Eastern District of Illinois.

"(m) Whether any portion of the alleged total gross income consisted of other than cash received during the year involved, and if so, what portion, and

"(n) Who received each of the various items of income making up the total alleged gross income for each year involved.

"The movants further pray that the charges and allegations in Counts II and IV of the indictment be ordered made more specific and certain by setting forth in the bill of particulars for each count:

"(o) The method or means of computation of the alleged income for the Peerless Club.

"(p) A list of the specific items which make up the gross or net receipts of the Peerless Club and the expenses allowed against claimed total gross income in computing the alleged net income of the Peerless Club.

"(q) The documents relied on to indicate the gross or net receipts and the expenses allowed for the Peerless Club.

"(r) The percentage of net income of the Peerless Club alleged to constitute income to these defendants.

"(s) The method or means of computation of the alleged income for the Paramount Club.

"(t) A list of the specific items which make up the gross or net receipts of the Paramount Club and the expenses allowed against claimed total gross income in computing the alleged net income of the Paramount Club.

"(u) The documents relied on to indicate the gross or net receipts and the expenses allowed for the Paramount Club.

"(v) The percentage of net income of the Paramount Club alleged to constitute income to these defendants."

The motions of all of the defendants for bill of particulars directed to Count IX of the indictment are in all pertinent parts identical. The motion of defendant Sam Magin provides as follows:

"The movant prays that the charges and allegations in Count IX of the indictment be ordered made more specific and certain by setting forth in the bill of particulars:

"(a) How, and in what manner, the alleged purpose of the alleged conspiracy, 'wilfully to defraud the United States of America of income taxes due and owing for the calendar years 1944 to date from defendant Frank Leonard Wortman,' was to be accomplished; what factual thing, transaction, state of affairs or condition was to be brought about as the fruition of the alleged conspiracy which would effect the defrauding of the United States of America of income taxes due and owing by the defendant Frank Leonard Wortman for the calendar years 1944 to the date of the indictment; what, as a matter of fact and not naked legal conclusion, the alleged conspirators, and each of them, did (or failed to do) in furtherance of the alleged conspiracy; and whether the United States of America was, as a matter of fact, defrauded of any income tax due and owing by or from the defendant Frank Leonard Wortman for any calendar year following the year 1943 and, if so, the amount thereof for each such year.

"(b) How, and in what manner, the alleged purpose of the alleged conspiracy, 'wilfully to defraud the United States of and concerning the exercise of its governmental function and right of ascertaining, computing, levying, assessing, and collecting income taxes due and owing to the United States of America for the calendar years 1944 to date by defendant Frank Leonard Wortman,' was to be accomplished; what factual thing, transaction, state of affairs or condition was to be brought about as the fruition of the alleged conspiracy which would effect the defrauding of the United States of and concerning its governmental function and right of ascertaining, computing, levying, assessing, and collecting income taxes due and owing to the United States of America for the calendar years 1944 to date by the defendant Frank Leonard Wortman; what, as a matter of fact and not naked legal conclusion, the alleged conspirators, and each of them, did (or failed to do) in furtherance of the alleged conspiracy; and whether the United States of America was, as a matter of fact, defrauded of and concerning the exercise of its governmental function and right of ascertaining, computing, levying, assessing, and collecting income taxes due and owing by or from the defendant Frank Leonard Wortman for any calendar year following the year 1943 and, if so, for what year or years.

"(c) How, and in what manner, the alleged purpose of the alleged conspiracy, 'to commit the crime of wilfully attempting to evade and defeat a large part of the income taxes to be due and owing to the United States of America by the

defendant Frank Leonard Wortman, for the calendar years 1944 to date' of the indictment, was to be accomplished; what fact or facts were to be brought about as the fruition of the alleged conspiracy which would constitute the said crime; what, as a matter of fact and not naked legal conclusion, the alleged conspirators, and each of them, did (or failed to do) in furtherance of the alleged conspiracy; and whether the crime of wilfully attempting to evade and defeat any part of income taxes due and owing to the United States of America by the defendant Frank Leonard Wortman for any calendar year following the year 1943 and, if so, in respect of what year or years it was committed.

"(d) How, and in what manner, the alleged purpose of the alleged conspiracy, 'to commit the crime of knowingly and wilfully falsifying, concealing and covering up by trick, scheme and device, material facts in matters within the jurisdiction of an agency of the United States, viz., the Internal Revenue Service of the United States Treasury Department, during the period from 1944 to' the date of the indictment, was to be accomplished; what trick, scheme and device was to be employed as the fruit of the conspiracy; what material facts were to be falsified, concealed and covered up, what, as a matter of fact and not naked legal conclusion, the alleged conspirators, and each of them, did (or failed to do) in furtherance of the alleged conspiracy.

"(e) The nature and extent of the proprietary and financial interest of the defendant Frank Leonard Wortman sought to be concealed by the alleged conspiracy, and the names of the partnerships, associations and corporations in which such interest was owned and held, and the years in which it was owned or held; and

how, and in what manner, the alleged conspiracy sought to effect the concealment thereof.

"(f) What false and misleading entries the alleged conspiracy and conspirators sought to cause to be made in books and records of the partnership known as Gregory Moore, et al, the partnership known as Plaza Amusement Company, and the proprietorship known as Paddock Liquor Company, and the names (or identifying descriptions) of the books and records in which the alleged conspiracy sought to cause them to be made.

"(g) What proper books and records the defendants failed to keep; what certain partnership returns of income the defendants failed to file; how, and in what manner, and to what extent, in detail, any partnership return filed by the defendants was inadequate or incomplete; what books and records caused to be kept by the defendants were false and fraudulent, and how in what respect, in detail, they were false and fraudulent, and what partnership returns of income, caused by them to be prepared, were false and fraudulent, and how and in what manner, in detail, they were false and fraudulent.

"(h) What property and interests in business were caused by the defendants to be concealed in the names of persons other than Frank Leonard Wortman; when they were so concealed; who actually owned such property and interests; and the nature and extent of the interests of Frank Leonard Wortman therein.

"(i) What false and misleading entries were caused by the defendants to be made in the books and records of Jack Langer's Mounds Club, Inc., and Plaza Amusement Company, Inc.; the names of the books and records (or identifying descriptions thereof) in which such

202

entries were made; the true ownership of such companies thereby allegedly concealed; and the capital investment therein by Frank Leonard Wortman, and

"(j) The date of each allegedly false and fraudulent income tax return of Frank Leonard Wortman caused to be prepared and filed by the defendants, and the income year covered thereby; and the manner in which each of such returns was false and fraudulent."

■ At the outset it must be pointed out that the function of a bill of particulars is to inform the accused of the nature of the charge with sufficient clarity to enable him to prepare for trial and to prevent surprise and to enable him to plead his acquittal or conviction in bar of any further prosecution for the same offense. United States v. Stein, D.C., 18 F.R.D. 17.

■ The rule is that if a defendant is not sufficiently informed by an indictment of the nature and cause of the accusations made against him and is fearful that upon trial he will be surprised by the evidence of the government, he can apply for a bill of particulars which the trial court, in the exercise of a sound legal discretion, may grant or refuse, as the ends of justice require. Mellor v. United States, 8 Cir., 160 F.2d 757.

■ The indictment here reveals that the nature of the charge is pleaded in detail. The details pleaded are sufficient to give the defendants notice of the charges against which they are to defend and are sufficient to enable the defendant, or defendants, to plead acquittal or conviction in bar of any future prosecution for the same offense. The indictment is of the form commonly used in tax prosecutions. The first count alleges that the defendant Frank Leonard Wortman did wilfully and knowingly attempt to evade and defeat income tax for the year 1953 by maintaining or causing to be maintained false and misleading books and

records, by concealing assets and covering up the amounts, nature and sources of income, by preparing or causing to be prepared a false and fraudulent joint income tax return on behalf of himself and his wife, and by filing or causing to be filed with the District Director of Internal Revenue at Springfield, Illinois, a false and fraudulent joint income tax return on behalf of himself and his wife, wherein he stated that their net income for the calendar year was the sum of $50,200.94 and that the amount of tax due and owing thereon was the sum of $20,824.62, whereas he then and there well knew the joint net income for the said calendar year was the sum of $92,209.78 or more, upon which said taxable income there was owing to the United States of America an income tax of $49,739.34 or more. Counts II and V are set out in the same detail as Count I. Count IX is a conspiracy count against all of the defendants and charges a conspiracy to violate specific sections of the Internal Revenue Code and the Criminal Code, each of which are set forth in the indictment, and further sets out the method and means whereby the conspiracy is charged to have been accomplished. In addition, this count charges overt acts which are alleged to have been performed in the furtherance of the conspiracy. The dates involved in the overt acts are set out and the tax returns involved are also identified.

The indictment is sufficient and a bill of particulars is not warranted and will be denied.

The defendants, Edward Wortman, George Frank, Sam Magin and Gregory Moore, have each filed separate motions to dismiss the indictment and have also filed their separate motions to suppress and their separate amendments to their motions to suppress.

The defendants, Edward Wortman, George Frank and Sam Magin, have filed identical motions to dismiss and to suppress, and all four of the above-named defendants have filed identical amend-

ments to their separate motions to suppress.

The motions of the defendants, George Frank, Edward Wortman and Sam Magin, to dismiss are bottomed on the reasons (1) that the defendants were subpoenaed and compelled to testify before the grand jury and were interrogated before the grand jury in the matters and things charged in the indictment; (2) that the grand jury was at the time of the defendants' appearances conducting an investigation regarding the activities of the defendants in order to determine whether the defendants had violated any of the laws of the United States; (3) that the defendants were not at any time advised or warned by the grand jury or by the United States Attorney or Assistant United States Attorney conducting the inquiry that they were under investigation by the grand jury or that they could not be compelled to testify against themselves; (4) that the use of the testimony before the grand jury and all evidence obtained directly and indirectly therefrom would constitute a violation of defendants' privilege against self-incrimination.

The motion of the defendant Gregory Moore to dismiss asserts as grounds therefor that the defendant was subpoenaed on certain dates set out in the motion and compelled to appear before the grand jury while the United States Attorney and the grand jury were investigating the defendant's conduct for alleged offenses against the laws of the United States, including the statutes cited in the indictment; that the defendant filed a motion to quash the subpoena, which motion was overruled, and the defendant compelled to appear; that while appearing before the grand jury, the defendant refused to answer on the grounds of possible self-incrimination and was subsequently brought before the Court and ordered to answer certain of the questions and ordered back to the grand jury room to comply; that the defendant returned to the grand jury room

and complied with the Court's order and that the defendant was not warned of his rights under the Fifth Amendment; that the defendant was subpoenaed and compelled to appear before a special agent of the Internal Revenue Service while the Internal Revenue Service was investigating the defendant's conduct for alleged offenses against the laws of the United States pertaining to Internal Revenue, including the offenses cited in the indictment; that the subpoena ordered the defendant to produce certain books, memoranda and papers and that the defendant was not advised or warned that he was being investigated and that the evidence obtained directly or indirectly from this appearance violated defendant's privilege under the Fifth Amendment; and that the interrogation was isolated from the observation of the public in violation of his right to a public trial, contrary to the Sixth Amendment to the United States Constitution.

The defendants, Edward Wortman, George Frank and Sam Magin, assert in support of their motions to suppress that they were subpoenaed to appear and testify before the grand jury of the Eastern District of Illinois; that they did appear and were interrogated relative to the matters upon which they were subsequently indicted and did testify with regard to the matters; that the grand jury was at the time of the defendants' appearances conducting an investigation regarding the activities of the defendants and that the defendants were not warned of their rights; that the use of the testimony before the grand jury would constitute a violation of defendants' privilege against self-incrimination under the Fifth Amendment to the United States Constitution.

The defendant Gregory Moore asserts in support of his motion to suppress in general the same grounds which he asserts in support of his motion to dismiss the indictment.

All four defendants in their separate amendments to their separate motions

to suppress further assert as grounds therefor that the defendants were isolated from counsel and from observation of the public during the interrogation, which deprived each of the defendants of the right to a public trial as guaranteed by the Sixth Amendment to the United States Constitution.

At the outset it must be pointed out that each of the defendants was at all times, prior to being called before the grand jury, represented by counsel, and at the hearing on the motions there was testimony that the various counsel for the defendants were permitted to be present and were present in areas adjacent to the grand jury room in which the investigations were made and that one or more did consult with his attorney during the course of the investigations. Thus, it would appear that the defendants of their own knowledge, and that of counsel, were certainly aware of their rights guaranteed to them by the Fifth Amendment to the United States Constitution.

The motion of the defendant Gregory Moore belies any lack of information concerning his constitutional guarantees inasmuch as the defendant asserted to the utmost those rights.

■ The interrogation of the defendants before the grand jury without assistance of counsel in the grand jury room and away from the observation of the public is not grounds for dismissing the indictment. Under the provisions of Rule 6 of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., proceedings before a grand jury, when in session, may be conducted in the presence of the grand jury, the attorney for the government, interpreter when needed, a stenographer, and the witness himself. The presence of an attorney for the witness is not permitted.

■ An appearance before a grand jury is not a trial in the manner in which the term "trial" is used in the Sixth Amendment. A grand jury is an investigative body, whose purpose it is to investigate and determine whether or not there is a reasonable belief that a crime has been committed. If they reasonably believe that a crime has been committed, they then return an indictment against the person or persons they believe committed the crime. The fact that a grand jury has returned an indictment does not mean that those charged therein are guilty of the offense. Innocence or guilt must then be determined by a court and jury. It is this latter process which is properly used to mean a trial as that term is used in the Sixth Amendment.

■ It is well settled that the appearance of a witness before a grand jury in response to a subpoena does not constitute a violation of his constitutional right against self-incrimination even though the witness is later indicted by the same grand jury. United States v. Wilson, D.C., 42 F.Supp. 721.

■ The mere possibility that the witness may later be indicted furnishes no basis for requiring that he be advised of his rights under the Fifth Amendment when summoned to give testimony before a grand jury. United States v. Scully, 2 Cir., 1955, 225 F.2d 113. United States v. Wilson, D.C., 42 F.Supp. 721.

■■ At the time of the appearances of these defendants before the grand jury, they were at most merely potential defendants; and in fact no indictment was returned by the grand juries before which these defendants appeared. Each defendant was subject to call as a witness before the grand jury and had only the right of any witness to decline to answer when interrogated concerning matters which might tend to incriminate him. As stated by Professor Wigmore, the privilege is "an option of refusal and not a prohibition of inquiry." United States v. Keenan, 7 Cir., 1959, 267 F.2d 118. The mere summoning of a witness before a grand jury gives no basis for the assumption that

his constitutional privilege will be impaired. His duty is to answer frankly until some question is propounded, the answer to which might tend to self-incrimination. United States v. Mangiaracina, D.C.W.D.Mo.1950, 92 F.Supp. 96.

 Response to a grand jury subpoena does not constitute coercion. The grand jury is authorized to call witnesses in the course of its deliberation, and witnesses are required as a public duty to testify. If a witness is asked questions which tend to incriminate him, it is his duty to claim the privilege and to refuse to testify. In this case it is not shown nor claimed that any of the defendants were indicted by any of the grand juries before which they testified. Rather, the indictment here under consideration was returned by a completely different grand jury than that grand jury before which these defendants appeared. In general, the testimony of a witness before the grand jury, later indicted, is admissible at his trial. Stanley v. United States, 6 Cir., 1957, 245 F. 2d 427.

Obviously, there was no violation of the Fifth Amendment in the examination of the defendants before the grand jury.

 The assertion of the defendant Gregory Moore that his compelled appearance before a special agent of the Internal Revenue Service violated his constitutional right against self-incrimination, for failure to advise or warn him of his right under the Fifth Amendment, is without merit. This appearance occurred during the year 1959, and to say that the defendant was aware of his constitutional privilege long before this time would be an understatement since he had on previous occasions availed himself of the full protection accorded by the Fifth Amendment in various hearings which he was required to attend.

After full consideration of the defendants' motions in the light of the authorities and precedence, the Court finds that the motions of the defendants, Gregory Moore, Edward Wortman, Sam Magin and George Frank, to dismiss the indictment should be denied and that the defendants' motions to suppress should be denied.

The Government filed its motion to strike and dismiss the motions of the defendants, Edward Wortman, Sam Magin, Gregory Moore and George Frank, to dismiss the indictment and their respective motions to suppress the testimony given by the defendants, Edward Wortman, Sam Magin, Gregory Moore and George Frank. The motions referred to in the Government's motion to strike have been disposed of on the merits; therefore, the Government's motion to strike is no longer material.

The defendants, Sam Magin, Gregory Moore, Edward Wortman and George Frank, filed their separate motions to inspect the grand jury minutes and move the Court for an order authorizing each of the defendants to inspect and copy the minutes and transcripts of their respective testimony before the grand jury and to inspect and copy the minutes and transcripts of the grand jury testimony of all witnesses who testified prior to the defendants' appearances before the grand jury.

The defendants each assert that a copy of the minutes and transcripts requested is necessary for the preparation of his defense in order that he may be fully informed as to the matters to which he testified before the grand jury and in order that he might show that he himself was under investigation at the time he was subpoenaed by the grand jury for the purpose of indicting him on the offenses charged in the indictment.

 The grand jury is charged to investigate the facts presented to it and to return an indictment only if there is legal and competent evidence that an offense has been committed and reasonable ground to believe that those charged are guilty. There is a strong presumption that the grand jury has faithfully

discharged its duty. Cox v. Vaught, 10 Cir., 1931, 52 F.2d 562. The testimony before the grand jury is not a matter to be displayed before the public generally and should not be disclosed except upon good cause shown, and such cause should be reasonably founded upon facts. Only in such circumstances should the secrecy of the proceedings before the grand jury be violated.

■ Under Rule 6(e) of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., under no circumstances has the court authority to grant a petition for a copy of the proceedings before the grand jury; however, by way of interpretation the federal courts have extended their jurisdiction so that they may remove the seal of privacy from grand jury proceedings when in the court's discretion the furtherance of justice requires it. These courts have further stated, however, that granting inspection of grand jury records and proceedings is a power to be sparingly exercised.

Secrecy has characterized grand jury proceedings from earliest times, and secrecy of proceedings before a grand jury is fundamental to our criminal proceedings. Exceptions are made only for such purposes as impeachment of a witness or prosecution for perjury by a witness. In re Bullock, D.C., 103 F.Supp. 639.

The reasons for secrecy of proceedings before a grand jury at common law were:

1. To prevent the escape of those indicted;

2. To insure the grand jury freedom in its deliberations;

3. To prevent any person from annoying the grand jurors;

4. To prevent subornation of perjury with witnesses who may testify before a grand jury and later appear at the trial of those indicted by it;

5. To encourage free and untrammeled disclosures by persons who have some information with respect to the commission of crimes; and

6. To protect the innocent person who is accused but exonerated from disclosure of the fact that he has been under investigation.

■■ Proceedings before a grand jury must in the interest of justice be held in the utmost secrecy, and such secrecy may be waived only upon a showing that injustice will otherwise result. Proceedings of a grand jury may be removed in part from the cloak of secrecy in prosecution for perjury. This Court has previously supplied to one of the defendants herein (namely, Sam Magin) a transcript of his testimony before the grand jury. The veil of secrecy was lifted to permit the defendant access to pertinent portions of the proceedings before a United States grand jury for the Eastern District of Illinois for the reason that the defendant was charged with having committed perjury before that grand jury; and, accordingly, the testimony of the defendant Sam Magin before that grand jury was provided to him. However, in order to permit a further removal of the secrecy of grand jury proceedings, the defendants must establish good cause and show the Court that failure to do so would result in an injustice. This these defendants have not done. In fact, they have failed to show any cause why the Court should grant their motions to inspect proceedings before the grand jury or to be supplied with a copy of their statements before the grand jury, other than their mere assertion that it is needed to prepare their defense. In order for this Court to exercise the discretion granted to it in removing the secrecy of the grand jury proceedings, something more must be shown.

Accordingly, the Court cannot say that in the exercise of its discretion he would be justified in providing the defendants with disclosure of the grand jury proceedings. Their motions to inspect and

copy the grand jury proceedings will be denied.

The Government filed its motion to quash or modify the subpoena served on J. G. Philpott, District Director of Internal Revenue.

At the hearing on this matter the Court entered an order modifying the subpoena complained of. That motion need not be further considered in this opinion.

Each of the defendants filed his separate motion for production of documentary evidence and objects under Rule 17 (c) of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., and has attached thereto a subpoena which was served on the United States Attorney for the Eastern District of Illinois, asking that he produce the following documents:

(1) All documents, books, papers and objects (except memorandum prepared by government counsel, documents or papers solicited by or volunteered to government counsel which consists of narrative statements of persons or memoranda of interviews), obtained by government counsel in any manner other than by seizure or process,

(a) in the course of the investigation by the Grand Jury which resulted in the return of the indictment herein, and

(b) in the course of the government preparation for trial of this cause, such books, papers, documents and objects (aa) which have been presented to the Grand Jury, or (bb) which are to be offered as evidence in the trial of these defendants.

(2) All documents, books, papers and objects (except memoranda prepared by government counsel and documents or papers solicited by or volunteered to government counsel, which consist of narrative statements of persons or memoranda of interviews), obtained by government counsel in any manner other than by seizure or process, in the course of the investigation by agents of the Federal Bureau of Investigation and other governmental agents and police officers, if such books, papers, documents and objects are to be offered as evidence in the trial of the defendants.

(3) All documents, books, papers and objects obtained by the government counsel in any manner other than by seizure or process, in the course of the investigation by governmental agents in the course of the government's preparation for trial of this cause, if such books, papers, documents and objects tend to impeach the testimony of any prospective prosecution witness.

(4) All memoranda of any kind and all statements allegedly given by the defendant to governmental agents.

(5) All memoranda and other writings in possession of the government which are going to be used for the purpose of refreshing the memory of any witness at the time of the trial of the defendants.

(6) All books, papers, documents and objects obtained from or belonging to defendants or obtained from others by seizure or by process.

(7) All photostats of books, papers, documents and objects heretofore mentioned in paragraphs 1 through 5 of this subpoena.

The United States Attorney filed his motion to quash the subpoenas of all the defendants or in the alternative to modify said subpoenas.

Rule 17(c) is not a pre-trial discovery vehicle but is designed as an aid in obtaining evidence which defendants can use at the trial. Only where it appears that the defendant may use his statements for evidentiary purposes, may its production be compelled pursuant to Rule 17(c). In allowing inspection, however, the trial judge has much discretion, and the rule has been construed as sanctioning inspection only when good cause is shown. United States v. Malizia, D.C. S.D.N.Y.1957, 154 F.Supp. 511.

■ The fact that subpoenaed material may be evidentiary and subject to production at the trial under a subpoena duces tecum obtained by a defendant does not mean that the defendant is entitled as a matter of right to pre-trial production and inspection under Rule 17(c). Whether a pre-trial production and inspection will be required is discretionary.

■■ In determining whether in a given case discretion should be exercised in favor of or against pre-trial production and discovery under Rule 17(c), it is necessary to keep in mind that although 17(c) and 16 have related purposes, they have different functions and applications. One of the practical objectives of 17(c) is to provide a means for sifting, in advance of trial, documents to be offered in evidence, where they are multitudinous. It is necessary to guard against action under Rule 17(c) which, contrary to its spirit and purpose, is aimed at obtaining discovery. The purpose of a subpoena duces tecum is to enable a party to obtain evidence at the trial to use in support of his case and not to pry into the case of his adversary. A court should be liberal in a criminal action in holding documents to be evidentiary for the purpose of permitting a party to obtain their production at the trial by subpoena; however, pre-trial production and inspection is a different matter. It should be conditioned on some showing by the defendant that the subpoenaed documents have evidentiary, as distinct from discovery, value to him.

In the instant case the defendants have failed to show affirmatively that the materials sought under the subpoenas are evidentiary in nature and have not set forth in their motions any reasonable grounds why the materials subpoenaed should be produced and consequently have presented no showing of good cause which is necessary and indispensable in a request for pre-trial production of documents under Rule 17(c). An examination of the subpoenas clearly shows that the defendants are on a fishing expedition which is contrary to the purpose of Rule 17(c). Accordingly, the Court in its discretion grants the motion of the United States Attorney to quash the subpoenas as they pertain to pre-trial discovery and the subpoenas requesting pre-trial discovery will be quashed.

For the above and foregoing reasons the Court does hereby Order, Adjudge and Decree:

That the defendants' joint motion to dismiss the indictment, premised on the grounds that the Government engaged in such efforts as publicity, calculatedly prejudicial to the defendants; that the indictment is insufficient; and that the overt acts in the substantive counts of the indictment are alleged in the disjunctive rather than the conjunctive, be and the same is hereby denied.

That the separate motions of the defendants to dismiss the indictment, based on the alleged illegality of the grand jury, be and the same are hereby denied.

That the defendants' separate motions for inspection and copying, pursuant to Rule 16, of those documents obtained by seizure or process belonging to the defendants, be and the same are hereby allowed, and as to those books, papers, documents and objects obtained from or belonging to others, the motions be and the same are hereby denied.

That the separate motions of the defendants for severance be and the same are hereby denied.

That the joint motion of the defendants, Frank Leonard Wortman and Elmer Sylvester Dowling, for bill of particulars be and the same is hereby denied.

That the motion of defendant Gregory Moore for bill of particulars be and the same is hereby denied.

That the motions for bill of particulars of the defendants, Edward Wortman, Sam Magin and George Frank, be and the same are hereby denied.

That the motions of the defendants, Edward Wortman, George Frank, Sam Magin and Gregory Moore, to dismiss the indictment, based on the grounds that they were compelled to appear before the grand jury, be and the same are hereby denied.

That the motions of the defendants, Edward Wortman, George Frank, Sam Magin and Gregory Moore, to suppress the testimony of the defendants before the grand jury and further to suppress all evidence obtained directly or indirectly from such testimony be and the same are hereby denied.

That the motions of the defendants, Sam Magin, Gregory Moore, Edward Wortman and George Frank, to inspect the grand jury minutes be and the same are hereby denied.

That the motion of the United States to quash the subpoenas issued pursuant to Rule 17(c) be and the same is hereby allowed and the subpoenas are hereby quashed.