**In re UNITED STATES of America, Petitioner.**

**UNITED STATES of America,**

v.

**Michael CLEMENTE, Defendant.**

No. 1422, Docket 79–3051.

United States Court of Appeals, Second Circuit.

Argued July 18, 1979.

Decided Oct. 22, 1979.

---

Michael S. Devorkin, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., Richard D. Weinberg, Asst. U. S. Atty., New York City, on brief), for petitioner.

Theodore E. Teah, New York City (Paul A. Victor, Dublirer, Haydon, Straci & Victor, New York City, on brief), for defendant.

Before VAN GRAAFEILAND, NEWMAN and KEARSE, Circuit Judges.

NEWMAN, Circuit Judge:

The United States seeks a writ of mandamus in advance of trial in this criminal case to challenge the trial court's interpretation of 18 U.S.C. § 3237(b) concerning venue for prosecution of certain internal revenue offenses.

The original indictment charged defendant Michael Clemente and ten others with racketeering, extortion, labor pay-offs, and tax evasion. Ten counts charged Clemente with income tax offenses in violation of 26 U.S.C. §§ 7201 and 7206(2) for the years 1973–1977. Each of the § 7201 counts alleged an attempt to evade taxes by signing and mailing a false income tax return, and the making of these returns was also alleged to be in violation of § 7206(2). The indictment alleged venue in the Southern District of New York. Relying on 18 U.S.C. § 3237(b),[1] Clemente moved to have the tax counts transferred to his district of residence, the Eastern District of New York. He submitted an affidavit stating that his tax returns for the years in question had been transmitted to the Internal Revenue Service by mail. Clemente's affidavit indicated that the returns were mailed from his residence within the Eastern District of New York to an I.R.S. Office also located in the Eastern District.

The Government resisted the motion, contending that it would establish venue for the tax counts in the Southern District of New York on the basis of the preparation of the tax returns and other acts of evasion

1. Section 3237 provides:

(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed. Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves.

(b) Notwithstanding subsection (a), where an offense is described in section 7203 of the Internal Revenue Code of 1954, or where an offense involves use of the mails and is an offense described in section 7201 or 7206(1), (2), or (5) of such Code (whether or not the offense is also described in another provision of law), and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may upon motion filed in the district in which the prosecution is begun, elect to be tried in the district in which he was residing at the time the alleged offense was committed: *Provided*, That the motion is filed within twenty days after arraignment of the defendant upon indictment or information.

in that District.[2] Though the Government contended that Clemente's accounting firm prepared the returns in the Southern District and mailed them to his residence in the Eastern District for signing, it represented that neither the mailing of the returns nor of any other items will be used to establish venue in the Southern District. The Government read § 3237(b) to permit the defendant to elect trial of tax counts in his district of residence only when a mailing is used to establish venue elsewhere.

The District Court (Hon. Leonard B. Sand, Judge) granted Clemente's motion to transfer venue for the tax counts to the Eastern District of New York. Judge Sand concluded that the tax counts fall within the statutory definition of an offense that "involves use of the mails" because in fact the mails were used in the course of activity alleged to be unlawful. This broad, though arguably literal, reading of the statute has been accepted by other district courts, *United States v. DeMarco*, 394 F.Supp. 611 (D.D.C.1975); *United States v. Youse*, 387 F.Supp. 132 (E.D.Wis.1975); see also *United States v. Turkish*, 458 F.Supp. 874, 878 n.5 (S.D.N.Y.1978); *United States v. Dalitz*, 248 F.Supp. 238 (S.D.Cal.1965), though the issue does not appear to have been considered by any appellate court.[3] The Government responded with a superseding indictment, which charged Clemente with all of the same offenses, including, in Counts 200–209, the income tax offenses; as redrafted, however, the tax counts omitted any reference to the mailing of a tax return. Clemente

again moved to transfer the tax counts. Judge Sand granted the motion, having previously indicated that § 3237(b) was applicable even if a mailing was not alleged in the indictment. The Government seeks a writ of mandamus to test the trial court's construction.

Section 3237(b) was added to the Criminal Code in 1958, P.L. 85–595, 72 Stat. 512 (1958). It is an exception to § 3237(a), which permits prosecution of continuing offenses in any district in which the offense was begun, continued, or completed. Section 3237(a) also specifically provides that any offense involving use of the mails is within the category of continuing offenses and may be prosecuted in any district from, through, or into which the mail moves.

Section 3237(b) provides that for certain offenses a defendant has an option to require prosecution in the district of his residence. The circumstances in which the option applies are "where an offense is described in section 7203 of the Internal Revenue Code of 1954, or where an offense involves use of the mails and is an offense described in section 7201 or 7206(1), (2), or (5) of such Code . . . ." Since the tax counts of the pending indictment charge Clemente with violations of §§ 7201 and 7206(2), the availability of the residence venue option depends upon whether these counts charge an offense that "involves use of the mails" within the meaning of § 3237(b).

---

2. Unless § 3237(b) applies to this case, it is clear that venue for tax offenses is properly laid in the district in which the returns were prepared. *United States v. Gross*, 276 F.2d 816, 819–20 (2d Cir.), *cert. denied*, 363 U.S. 831, 80 S.Ct. 1602, 4 L.Ed.2d 1525 (1960). Since the Government seeks to establish venue in the Southern District because the allegedly fraudulent returns were prepared there, we have no occasion at this point to consider what other acts of evasion might also suffice to establish venue.

3. On two occasions footnotes to opinions of this Court have stated that a taxpayer charged with income tax evasion outside his district of residence may elect by virtue of § 3237(b), to be tried in the district in which he was residing

at the time of the alleged offense. *United States v. Slutsky*, 487 F.2d 832, 839 n.9 (2d Cir. 1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974); *United States v. Gross*, 276 F.2d 816, 820 n.1 (2d Cir.), *cert. denied*, 363 U.S. 831, 80 S.Ct. 1602, 4 L.Ed.2d 1525 (1960). Both *Slutsky* and *Gross* upheld venue in the district where the tax returns were prepared, rejecting contentions that venue could be laid only in the district where the return was either signed and sent (*Gross*) or received (*Slutsky*). Neither defendant sought to invoke the transfer option of § 3237(b), and thus this Court had no occasion to consider the scope of the option nor to construe the qualifying phrase "involves use of the mails."

There are at least three possible interpretations of the phrase "involves use of the mails." Most broadly, the phrase could apply to an offense in the course of which a mailing occurred. More narrowly, the phrase could apply to an offense in which a mailing not only occurred but is also an element of the crime charged.[4] Most narrowly, the phrase could apply to an offense in which a mailing not only occurred but is also the basis on which the prosecution seeks to establish venue.

■ Since the statutory language does not unambiguously require any one of these three interpretations, it is appropriate to resort to available indications of legislative intent. Chief among these is the "mischief to be corrected," an important guide to statutory interpretation and one that Justice Cardozo relied upon to avoid a reading that would "stick too closely to the letter" of a statute. *Warner v. Goltra*, 293 U.S. 155, 158–59, 55 S.Ct. 46, 48, 79 L.Ed. 254 (1934); see also *In re Letters Rogatory*, 385 F.2d 1017, 1020 (2d Cir. 1967) ("The amendment must be interpreted in terms of the mischief it was intended to rectify.").

■ The mischief to be corrected by § 3237(b) was the prosecution of a taxpayer at a great distance from his residence simply because his tax return had been mailed to an Internal Revenue Service office located in a district remote from the taxpayer's district of residence. Congressman Prince H. Preston, who introduced the bill, H.R. 8252, 85th Cong., 2d Sess. (1958), that became § 3237(b), told a House Judiciary Subcommittee hearing of the unfairness of requiring a defendant from Savannah, in the Southern District of Georgia, to defend in Atlanta, in the Northern District of Georgia, solely because the Collector's office was located in Atlanta. Hearings on H.R. 8252 Before Subcommittee No. 4 of the House Committee on the Judiciary, 85th Cong., 2d Sess. 7, 10–12 (Apr. 25, 1958) (unpublished). The Subcommittee also heard similar complaints on behalf of District of Columbia taxpayers required to defend in the District of Maryland because their returns were mailed to Baltimore. *Id.* at 27. Reading the statute to apply only when the prosecution uses a mailing to establish venue in a district other than the district of the defendant's residence fully meets the problem that concerned the Congress.

There are additional indications that Congress did not intend the occurrence of any mailing in the course of an offense to provide the defendant with the option to transfer venue to his district of residence. Congressman Preston told the subcommittee hearing, "The bill would not cover situations where the use of the mails is not an ingredient of the offense charged."[5] *Id.* at 6. Moreover, both the House and Senate reports observed that "in the type of case covered by this bill, the acts for which the defendant is really being tried are generally committed in the district in which he resides and certainly bear little or no relationship to the place where his tax return is

---

4. This second category would presumably include not only offenses where the mailing is alleged in the indictment as an element of the offense but also those where the alleged element, *e. g.,* the attempted willful evasion by means of submission of a fraudulent tax return, was in fact accomplished by mailing the return.

5. This point was made in reference to the original version of H.R. 8252, which established venue solely in the district of the taxpayer's residence, rather than affording the taxpayer an option to transfer to that district. The comment is thus subject to the interpretation that it was made to answer the expressed objection of the Treasury Department that Sixth Amendment problems would be encountered if venue were laid in the district of residence even if no element of the offense occurred there. *See*

letter from Dan Throop Smith, Deputy to the Secretary, to Hon. Emanuel Celler (Apr. 23, 1958), *reprinted in* S.Rep.No. 1952, 85th Cong., 2d Sess. 4 (1958), *reprinted in* [1958] U.S.Code Cong. & Admin.News, pp. 3261, 3264. Even if Congressman Preston was responding to this objection, he was nonetheless assuring his listeners that his bill did not broadly cover all offenses in which a mailing occurred. While the bill was amended to make the transfer to this district of residence optional, the key phrase to be construed, "involves use of the mails," is identical in both the initial version of H.R. 8252, on which Congressman Preston testified, and the enacted version. The original and amended versions of H.R. 8252 are set out at 104 Cong.Rec. 13064 (1958).

received." H.R.Rep.No. 1890, 85th Cong., 2d Sess. (1958); S.Rep.No. 1952, 85th Cong., 2d Sess. 2 (1958), *reprinted in* [1958] U.S. Code Cong. & Admin.News, pp. 3261, 3262. That observation surely excludes a prosecution like Clemente's since the Government is undertaking to prove that his criminal conduct, not the receipt of any mailed item, occurred in the Southern District of New York. There is no indication that Congress intended to give a taxpayer the option to be tried in his district of residence when it is his criminal conduct and not the use of the mails that the Government relies upon to establish venue elsewhere.

Furthermore, when Congress selected subsections of § 7206 of the Internal Revenue Code to which § 3237(b) would apply, it included only subsections (1), (2) and (5), which are the ones where the mailing of a return might otherwise be used to force a taxpayer to defend far from his district of residence. Omitted were subsections (3) and (4); these subsections cover offenses in which some use of the mails might occur, but not a mailing to some distant I.R.S. office where a return is to be filed.

Finally, a construction of § 3237(b) that relies upon any mailing in the course of an offense should be rejected because it leads to bizarre results unlikely to have been intended by Congress. In a multi-defendant case such as this, where the Government alleges that the evidence of defendant's racketeering is also evidence of his receipt of unreported income, a transfer of the tax counts to the district of residence would mean that the witnesses would bear the inconvenience and the public would bear the cost of two substantially similar trials,

in the event that either all counts against Clemente or only the tax counts against him were transferred. A broad reading of the statute also leads to unintended results in cases involving only one defendant. Consider the defendant who earns unreported income in District A, has his tax return prepared in District A, and files his return in District A because an I.R.S. service center is located there. Under a broad reading of the statute, he could obtain a transfer to District B, his residence, simply because his accountant mailed him his return for signature, even though filing was accomplished by hand delivery. Or a defendant could obtain the same result whenever he could allege that the mails were used in some connection with obtaining income, even though the item mailed was not the tax return.[6] Thus interpreted, the statute would cover virtually all violations of § 7201. Congress could not have intended this result because it used the phrase, "involves use of the mails," as a modifier to limit the § 7201 violations to which § 3237(b) applies.

We conclude that the "involvement" of the mails that Congress intended was not the bare occurrence of a mailing during the course of the alleged offense. Congress was legislating an exception to a venue statute that permitted the Government to use the fact of a mailing into a distant district to prosecute a taxpayer far from his residence. The exception of § 3237(b) is a shield against that governmental power. It is not a sword enabling the taxpayer to transfer prosecution to his district of residence in cases such as this where the Government seeks to establish venue wholly

---

**6.** The dissent suggests that § 3237(b) covers at least a case like Clemente's where the item mailed was a tax return sent to the I.R.S. That mailing originated and ended in Clemente's district of residence, and neither it nor any other mailing is relied upon by the Government to establish venue in the district of prosecution. If the statute's option were available simply because a taxpayer mailed his return to an I.R.S. office within his district of residence, then a further anomalous distinction would have been created by the statute. Of those taxpayers, like Clemente, who are accused of committing acts of evasion in a district other

than the district of residence and whose I.R.S. office is located within the district of residence, the ones who mailed the tax return could demand transfer of prosecution to the district of residence, while the ones who saved postage and delivered the return by hand to a nearby office would face prosecution in the district where their acts of evasion occurred. This anomaly further indicates that what triggers the transfer option is not the fact of a mailing nor the nature of what is mailed but whether a mailing is used by the Government to prosecute a taxpayer away from his district of residence.

apart from any use of the mails. The statute does not enable a taxpayer who has violated the law in a district by means other than use of the mails to escape prosecution in that district simply by mailing a letter. We construe § 3237(b) to apply, at most, to tax prosecutions that involve the use of the mails in the sense that a mailing, whether or not alleged in the indictment, is the basis on which the prosecution seeks to establish venue in a district other than the taxpayer's district of residence.[7] Under this construction of the statute, Clemente's motion to transfer venue of the tax counts should have been denied.

[4] We also conclude that this is an appropriate case for the issuance of a writ of mandamus to correct the District Court's construction of § 3237(b). The District Court did not purport to exercise discretion, but felt obliged to transfer the tax counts. This transfer was beyond the power created by Congress. Correction by mandamus is especially appropriate here since the United States cannot otherwise secure appellate review of the District Court's ruling. *Cf. Helstoski v. Meanor*, —— U.S. ——, ——, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979); *United States v. Weinstein*, 511 F.2d 622 (2d Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975).

A writ of mandamus will issue directing the District Court to vacate its order transferring Counts 200–209 of the indictment. In view of the impending trial, the mandate shall issue forthwith.

KEARSE, Circuit Judge (dissenting):

Lest we remain lost in the thicket of "bizarre" hypothetical results planted by the majority, let us recall the facts of the case before us.

The counts on which Clemente has been indicted include five counts of knowingly making and signing false income tax returns in violation of 26 U.S.C. § 7206(1), and five counts of using those false returns to evade income taxes in violation of § 7201.

The government, relying on the first paragraph of 18 U.S.C. § 3237(a),[1] which (irrespective of whether or not the mails are used) allows venue in any district where a crime was committed, continued or completed, has commenced prosecution in the Southern District of New York, where Clemente's returns were prepared by his accountant.

Clemente has submitted to the district court an affidavit stating that he believes the returns in question were filed with the IRS by mail.[2]

Section 3237(b) says "Notwithstanding subsection (a), . . . where an offense involves use of the mails and is an offense described in section 7201 or

---

7. Since in this case the Government does not rely on the mailing of any item to establish venue in a district other than the taxpayer's district of residence, it is unnecessary to decide whether the statute would be available when the Government seeks to establish venue on the basis of any mailing or only on the basis of a mailing to an office of the I.R.S. The latter situation is the one contemplated by Congress, and is the one in which the place where the mailing is received is determined by the convenience of the Government in locating I.R.S. offices, rather than by the defendant's choice in selecting those to whom he wishes to correspond. If, pursuant to § 3237(a), venue could be established by a mailing other than a mailing to an I.R.S. office, it remains an open question whether in enacting § 3237(b), Congress intended to let tax defendants avoid prosecution in a distant district into which they mailed an item not addressed to the I.R.S.

1. Although the government nowhere expressly states on what venue provision it relies, it is clear that it relies on the first paragraph of § 3237(a). First, in support of venue in the district in which the returns were prepared, the government cites only cases upholding such venue under § 3237(a) (Brief at 8 n.*), *e. g., United States v. Slutsky*, 487 F.2d 832, 839 (2d Cir. 1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974). It does not appear that any other section supports venue on this single fact. Second, the government's brief states: "[I]n the instant case the Government does not rely on the *second* paragraph of Section 3237(a) for venue . . . ." (Brief at 9; emphasis added.)

2. Credence is given to Clemente's affidavit by the fact that the original indictment charged that the mails were used *as the means for* violating the tax statutes.

7206(1)," the defendant has the option of having venue of those offenses transferred to the district in which he resided at the time of the alleged offense.

At the time the returns in question were filed, Clemente lived in the Eastern District of New York, and he has moved to have venue of the tax counts transferred to that district.

In my view, the majority's decision that venue must remain in the Southern District is warranted neither by the language of the statute, nor by its legislative history.

## I. The Language of the Statute

The statute in question here is commonly known as the "continuing offense" statute, 18 U.S.C. § 3237 (1976). It provides as follows:

"(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves.

"(b) *Notwithstanding subsection (a),* where an offense is described in section 7203 of the Internal Revenue Code of 1954, or *where an offense involves use of the mails and is an offense described in section 7201 or 7206(1), (2), or (5) of such Code (whether or not the offense is also described in another provision of law), and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may* upon motion filed in the district in which the prosecution is begun, *elect to be tried in the district in which he was residing at the time the alleged offense was commit-*ted: *Provided,* That the motion is filed within twenty days after arraignment of the defendant upon indictment or information." (Emphasis added.)

In the context of the present case there is nothing ambiguous about § 3237. Subsection (a) plainly gives the government certain latitude in choosing the district in which to commence prosecution of any offense that was begun in one district and continued or concluded in another. The two paragraphs of subsection (a) ensure this latitude regardless of whether or not the offense involves use of the mails. Equally plainly, if the offense *did* involve use of the mails and is one of those enumerated, subsection (b) gives the defendant a limited option to supersede the choice of district given the government under subsection (a). The introductory phrase of subsection (b), "Notwithstanding subsection (a)," is perfectly clear: it requires that the provisions of (b) be applied in spite of any conflicting provision or apparent obstacle found in (a).

The government argues that since it has not relied on mailing to establish venue, we should not allow the transfer merely because mailing is "involved in some way." (Brief at 9–10.) Since it is clear that the government does rely on the first paragraph of § 3237(a) for venue,[3] the argument is, in effect, that the option given a defendant in (b) is not available if the government relies only on the first paragraph of (a).

Thus, instead of "Notwithstanding subsection (a)," the government would have us read § 3237(b) as if it provided "Notwithstanding *the second paragraph of* subsection (a)." Subsection (b)'s introductory phrase as written, however, obviously contains no such limitation.

The majority achieves the equivalent of the amendment contended for by means of a different route. First it finds the phrase "where an offense involves use of the mails" ambiguous because it is broad enough to cover a number of hypothetical constructs. Then, relying on certain legislative history, discussed below, it elects to

---

**3.** *See* note 1 *supra.*

narrow that phrase, reading it as if it provided "where *an offense involves use of the* mails *and such use is the basis for establishing venue . . . .*"

Given the mailing claimed by Clemente, the applicability of "involves use of the mails" is hardly unclear. While the word "involves" is broad, the use of the mails here is quite obviously encompassed in any reasonable interpretation: the income tax returns which the government contends violated §§ 7201 and 7206(1) were mailed to the IRS. Without doubt the alleged tax offenses here "involved" use of the mails. Indeed, in other cases the government has contended that the phrase " 'where the offense involves use of the mails' . . . *means* the mailing by the taxpayer of his return to IRS." *E. g., United States v. DeMarco*, 394 F.Supp. 611, 614–15 (D.D.C. 1975) (emphasis added). While this may not be all that the phrase means, it is difficult to imagine that it does not include at least the case confronting us, where the defendant's allegedly fraudulent and evasive return is mailed to the IRS.

Given the lack of ambiguity of § 3237(b) in the present case, the majority's resort to the legislative history of the section was unnecessary. Even that history, however, fails to justify the majority's effective modification of the language of subsection (b) in order to countermand the transfer of venue.

II. The Legislative History

As stated by the majority, the chief goal of the enactment of § 3237(b) was to give a taxpayer an option to avoid being prosecuted in a district remote from his home simply because he had mailed his tax return to that district. Section 3237(b) was introduced as H.R. 8252, 85th Cong., 1st Sess. (1957), by Rep. Prince Preston of Georgia. It was enacted in the form recommended by the Senate and House of Representatives

Judiciary Committees. The committee reports recommending its passage focused principally on the problem of distance.[4]

"Testimony before a subcommittee of the Committee on the Judiciary revealed that under current procedures, defendants in certain tax-evasion and tax-fraud cases are often prosecuted in a judicial district substantially distant from the district in which they reside. This causes a heavy burden upon them which is more appropriately and more easily borne by the prosecution.

\*    \*    \*    \*    \*    \*

"The committee is of the opinion that too frequently prosecutions are not brought in the defendants' home districts but rather in the district most convenient to the district director of internal revenue. Often that district may be a considerable distance from the defendant's home."

H.R.Rep.No. 1890, 85th Cong., 2d Sess. 2 (1958); *accord*, S.Rep.No. 1952, 85th Cong., 2d Sess. 1–2 (1958), *reprinted in* [1958] U.S. Code Cong. & Admin.News, pp. 3261, 3262. The language of subsection (b) as recommended (and enacted), however, contained no geographic or proximity restrictions, as both congressional committees appeared content to recommend giving the transfer option to all defendants:

"Therefore, the committee is of the view that the defendant should have the right to be tried in the district in which he resided at the time the alleged offense was committed, if he so chooses, and that this should not be a matter of discretion."

H.R.Rep.No. 1890, *supra* at 2; S.Rep.No. 1952, *supra* at 2, [1958] U.S.Code Cong. & Admin.News at p. 3262.

There was no suggestion in either report that the defendant's option to transfer would not be exercisable unless the govern-

---

4. The distances which the congressmen discussed in the House subcommittee varied considerably, from the great distances in Texas, to the intermediate distances in Georgia, to the scant 40 miles between Washington, D.C. and Baltimore, Maryland. Hearings on H.R. 8252 Before Subcommittee No. 4 of the House Committee on the Judiciary, 85th Cong., 2d Sess. 11, 12, 27 (Apr. 25, 1958) (unpublished). One representative observed that distance was not a problem in California and another imagined that it was not a problem in New York. *Id.* at 15–16.

ment relied on mailing to establish venue.[5] The only elaboration on the phrase "involves use of the mails" was the description of the bill as permitting the defendant to have transferred to his home district certain offenses, with the statement that "The offenses covered are *the use of the mails to commit* acts described in sections 7201 . . . and 7206(1), (2), and (5) . . . ." H.R. Rep.No. 1890, *supra* at 1; S.Rep.No. 1952, *supra* at 1, [1958] U.S.Code Cong. & Admin. News at p. 3261. (Emphasis added.)

Notwithstanding this support in the committee reports for interpreting "involves use of the mails" to apply to Clemente's use of the mails to commit the alleged offenses, the majority reads into subsection (b) the condition that the transfer option is available to a defendant only if the government uses mailing to establish venue, relying on a statement by Representative Preston as follows:

"The bill would not cover situations where the use of the mails is not an ingredient of the offense charged."

Hearings on H.R. 8252 Before Subcommittee No. 4 of the House Committee on the Judiciary, 85th Cong., 2d Sess. 6 (Apr. 25, 1958) (unpublished) (hereinafter "Hearings").[6] This statement, however, was made in support of Representative Preston's original bill which, instead of merely giving a defendant the *option* to have venue

changed to his home district, *made venue in his home district mandatory.*

At the time of the above statement, H.R. 8252 provided that where an offense involves use of the mails,

"the offense may be prosecuted (1) *only* in the district in which the defendant was residing at the time the offense was committed *if such mail matter has moved through that district* . . . ."

Hearings, *supra* at 26; *see* 104 Cong.Rec. 13064 (1958). (Emphasis added.) This was a vital difference because the Sixth Amendment to the Constitution gives a defendant the right to be tried in the district in which the crime was allegedly committed. Since the original H.R. 8252 *required* venue to be in the defendant's home district, the Treasury Department had attacked the bill as constitutionally flawed.[7] It was expressly in response to these attacks that Representative Preston stated his view that mailing would be an essential ingredient of the offense charged, and repeatedly cited that portion of the original bill which expressly conditioned venue on movement of the mail through the defendant's home district. For example, the text of Representative Preston's statement surrounding the language relied on by the majority is as follows:

"[T]his bill, H.R. 8252, as drafted, would provide that where the use of the mails is an ingredient of an offense charged under the sections of the Internal Revenue

---

5. Indeed, Congress did not allow the government to escape the effect of § 3237(b) by failing to rely on 26 U.S.C. §§ 7201 or 7206(1), (2), or (5). Section 3237(b) provides that the defendant has the venue transfer option whenever the offense is "described in" one of those sections, "whether or not the offense is also described in another provision of law."

6. The government's brief in addition quotes the following statement by Representative Preston:
   " '. . . this is only involved where the mails are used in offenses under statutes *where the mailing is an essential element* and where the mailing occurs in his district' . . . ." (Government brief at 16, emphasis therein, quoting Hearings, *supra* at 25–26.)

7. The Treasury Department's letter objecting to the bill pointed out:
   "Article III, section 2, clause 3, and the sixth amendment of the Constitution secure

to persons accused of crimes the right to trial in the State and district in which a crime has been committed. It is not clear that, in some instances, the proposed legislation does not contravene these provisions. Indeed, in some instances, venue would seem to be laid in the district in which the accused resides rather than that in which the unlawful act was performed. Consequently, there is a possibility that the proposed legislation would be held null and void with respect to a crime not shown to have been committed in the judicial district of the defendant's residence and in which district the indictment has been returned under the authority of such legislation."
Letter from Dan Throop Smith, Deputy to the Secretary, to Hon. Emanuel Celler (April 23, 1958), *reprinted in* S.Rep.No. 1952, *supra* at 4, [1958] U.S.Code Cong. & Admin.News at p. 3264.

Code of 1954 as specified in the bill, the defendant *must* be prosecuted in the district in which he resides, *if the mail matter involved has passed through that district.*

"The bill would not cover situations where the use of the mails is not an ingredient of the offense charged. *If t [sic] the bill attempted to cover such situations, by requiring tha [sic] defendants be prosecuted in the district of their residence,* although no part of the offense charged occurred there, *the bill would be of doubtful constitutionality in view of the sixth amendment to the Constitution.*"

Hearings, *supra* at 6 (emphasis added); *see also id.* at 3–6, 25–26.

There are many reasons why Representative Preston's statement that mailing must be an essential ingredient for § 3237(b) to apply [8]—and whatever implication may be found therein that the government must rely on mailing for that subsection to apply—should not hold sway.[9] First, Representative Preston's view cannot be imputed to Congress as a whole. Even before the bill was amended the Preston view was rejected by at least one member of the House Subcommittee before which he testified. Representative Dowdy, who supported the bill, said, "I do not consider mailing an element in this offense."[10] In addition, neither the House nor the Senate Judiciary Committee reports contained any hint of Representative Preston's view. H.R.Rep.No. 1890, *supra*; S.Rep.No. 1952, *supra.* Most importantly, the constitutional flaw that Representative Preston was addressing was eliminated, as the congressmen decided to make home district venue optional rather than mandatory (Hearings, *supra* at 23–24), and the linguistic underpinning of the Preston cure for the constitutional flaw, *i. e.,* the original condition that the "mail matter has moved through the district," was deleted.

*Judicial Interpretation of the Statute*

Not surprisingly, in light of the plain, broad language of § 3237(b) and the history of its descriptions and amendments before enactment, every court which has dealt with a timely § 3237(b) motion to transfer the offenses described in §§ 7201 or 7206(1), (2), or (5), has granted the transfer where use of the mails was claimed by the defendant, regardless of whether or not the government relied on use of the mails to establish venue. *See United States v. DeMarco,* 394 F.Supp. 611 (D.D.C.1975), *petition for mandamus denied without opinion* (D.C.Cir.); *United States v. Youse,* 387 F.Supp. 132 (E.D.Wis.1975); *United States v. Dalitz,* 248 F.Supp. 238 (S.D.Cal.1965); *United States v. Rosenberg,* 226 F.Supp. 199 (S.D.Fla.1964); *United States v. Wortman,* 26 F.R.D. 183, 192 (E.D.Ill.1960); *United States v. Kimble,* 186 F.Supp. 616 (S.D.N.Y.1960).[11]

8. Taken at face value, the supposition that mailing *is an essential element of the offenses* of tax fraud or tax evasion is meritless. Mailing may or may not be the means of committing the offense. It certainly is not legally essential to its commission. *See United States v. Kimble,* 186 F.Supp. 616, 618 (S.D.N.Y.1960).

9. The majority concludes that Representative Preston, although responding to the constitutional objection, was nevertheless assuring his colleagues that his bill did not cover all offenses in which a mailing occurred. Whether or not this conclusion is correct, Representative Preston seemed certain that at least any mailing by a defendant of his tax return would be covered:

"[T]his bill . . . is to serve the large majority of people who mail their tax returns.

"They prepare them, and they would go to the Post Office and mail them in their own district."
Hearings, *supra* at 27.

10. Hearings, *supra* at 8. Indeed, Representative Dowdy suggested that reference to mailing be omitted. *Id.*

11. Where the charge has been conspiracy to evade taxes, some courts have held that a § 3237(b) transfer of such charges is not a matter of right, but lies within the discretion of the court, since conspiracy is not one of the crimes listed in § 3237(b). *See, e. g., United States v. Ostrer,* 458 F.Supp. 540 (S.D.N.Y. 1978); *United States v. Turkish,* 458 F.Supp. 874, 878 (S.D.N.Y.1978). The contrary view was taken in *United States v. Rosenberg, supra,* 226 F.Supp. at 201.

These cases have unanimously rejected the arguments urged by the government here. In *United States v. Kimble*, for example, the government contended, *inter alia*, that the defendant had a § 3237(b) option only if "the indictment alleges use of the mails and residence of the defendant in a district other than that in which the indictment is found." 186 F.Supp. at 617. The court found the government's contention

"obviously . . . unsound. Charges of the nature here involved can be sufficiently alleged without alleging either the means by which the acts were accomplished or the residence of the defendant at the time they were accomplished. These matters are not elements of these offenses and consequently they need not and are not likely to be included in the indictment or information."

*Id.* at 618.

Some of the transfers required by § 3237(b) have, regrettably, resulted in inefficiencies. For example, venue as to two defendants charged with falsifying, or aiding another to falsify, the same income tax return has been transferred to the separate home districts of each defendant. *United States v. Rosenberg, supra*, 226 F.Supp. at 200; *United States v. DeMarco, supra*, 394 F.Supp. at 614–18. Transfers have been allowed even though the distance between the defendant's residence and the original forum is small. *United States v. Kimble, supra*, 186 F.Supp. at 616–17 (transfer from Manhattan (Southern District of New York) to Brooklyn (Eastern District of New York)); *United States v. Wortman, supra*, 26 F.R.D. at 191–93 (transfer from East St. Louis (Eastern District of Illinois) to St. Louis (Eastern District of Missouri)). Transfer has been allowed even though it greatly enlarged the distance from defendant's abode to the courthouse: one defendant's residence in the Southern District of

Illinois was just 9 miles from the courthouse in the Eastern District of Illinois, the original forum; venue as to that defendant was transferred to the Southern District of Illinois in which the courthouse was 100 miles from his home. The court felt it had "no alternative" but to transfer:

"The Congress apparently did not provide the courts with discretion in determining the facts or circumstances under which a transfer would be justified; rather, Congress intended that defendants be given the absolute right to be tried for alleged violation of the sections enumerated in paragraph (b) of Section 3237 in the district of their residence regardless of the distance involved."

*Id.* at 192. Transfers have been allowed as to some of the charges against one of many defendants. *See United States v. Tarnopol*, 561 F.2d 466, 469 (3d Cir. 1977) (86-count, seven-defendant indictment charging mail fraud and other crimes; court noted that tax evasion counts against one defendant had been transferred pursuant to § 3237(b) from Newark, New Jersey, to the Southern District of New York).

More than two decades have passed since Congress enacted § 3237(b), and until now all of the courts have uniformly felt compelled to apply the statute in accordance with the plain breadth of its language. Although none of these decisions is binding on us,[12] they are nonetheless significant, for during this period Congress has evinced no dissatisfaction with the courts' straightforward application of the language. While in many circumstances congressional inaction may be of little significance, since it is permissible to infer that Congress has been completely engrossed in matters other than the section in question, no such inference is warranted here.

In 1966, eight years after enactment of § 3237(b), Congress again turned its atten-

---

**12.** The Supreme Court has never addressed the issue. In the one case in which the issue was presented to this Court, it was not reached. *Abrams v. McGohey*, 260 F.2d 892 (2d Cir.), denying mandamus in and dismissing appeal from *United States v. Abrams*, 166 F.Supp. 509 (S.D.N.Y.1958) (holding § 3237(b) motion untimely).

tion to this subsection, amending it to add another offense as to which a defendant could opt to be prosecuted in the district of his residence.[13] Between 1958 and 1966, courts had held, *inter alia*, that use of the mails need not be alleged (*United States v. Kimble, supra* (1960)); that the distance between the defendant's residence and the district chosen by the government need not be great (*id.*); that the transfer may even greatly enlarge the distance between a defendant's residence and the situs of trial (*United States v. Wortman, supra* (1960)); and that co-defendants charged with tax fraud with respect to the same return may be transferred to different districts for separate, duplicative trials (*United States v. Rosenberg, supra* (1964)). They had, in short, applied the statute broadly, as it was written.

If these early decisions applying § 3237(b) in accordance with the breadth of its terms were contrary to Congress' intent, surely Congress could have been relied on in 1966 to make the simple adjustment necessary to narrow the statutory language when it was amending that very subsection.

For all of the foregoing reasons I would deny the petition for mandamus.

---

**13.** As enacted in 1958, § 3237(b) applied only to prosecutions for tax evasion under 26 U.S.C. § 7201 and tax fraud under 26 U.S.C. § 7206(1), (2), or (5). Act of Aug. 6, 1958, Pub.L.No. 85–595, 72 Stat. 512. In 1966, Congress amended the statute to extend its coverage to the failure to file a tax return, which is proscribed by 26 U.S.C. § 7203. Act of Nov. 2, 1966, Pub.L.No. 89–713, § 2, 80 Stat. 1108; *see* S.Rep.No. 1625, 89th Cong., 2d Sess. (1966), *reprinted in* [1966] U.S.Code Cong. & Ad.News 3676, 3680–81.