**UNITED STATES of America,**

v.

**John DeFABRITUS, Defendant.**

**No. 85 Cr. 144 (DNE).**

United States District Court,
S.D. New York.

April 11, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Raymond A. Levites, New York City, of counsel), for U.S.

Stillman, Friedman & Shaw, P.C., New York City (Charles A. Stillman and Peter A. Chavkin, New York City, of counsel), for defendant John DeFabritus.

## OPINION AND ORDER

EDELSTEIN, District Judge:

In an Indictment filed February 26, 1985, defendant, John DeFabritus ("DeFabritus"), is charged with conspiracy to defraud the United States and with numerous substantive violations of the federal income tax laws. DeFabritus has moved to dismiss the indictment on a number of grounds and to compel the government to provide him with a bill of particulars.

The indictment contains ten counts. Count One charges DeFabritus with conspiring to defraud the United States and to commit violations of the Federal income tax laws, in violation of 18 U.S.C. § 371. In substance, this count alleges that DeFabritus, the senior vice-president of ARC Electrical Construction Company ("ARC") and William Callahan, formerly executive president and treasurer of ARC and now deceased, together with other employees and third party vendors of ARC, conspired to interfere with the proper operation of the

Internal Revenue Service ("IRS") by depriving it of accurate information necessary to compute and assess the individual tax liability of DeFabritus and other key ARC executives for the years 1978 through 1980, and the corporate tax liability of ARC for the same time period.

The remaining nine counts charge DeFabritus with violations of the tax laws flowing from his participation in the alleged conspiracy. Counts Two through Four charge DeFabritus with evasion of his individual income taxes, amounting to approximately $149,039.00 for the years 1978 through 1980, in violation of 26 U.S.C. § 7201. Counts Five through Seven charge DeFabritus with falsely subscribing to his individual income tax returns for the same years, in violation of 26 U.S.C. § 7206(1). Counts Eight through Ten charge DeFabritus with aiding, abetting and assisting in the preparation and filing of falsified and intentionally misleading corporate tax returns for ARC for the calendar years 1978 through 1980, in violation of 26 U.S.C. § 7206(2).

I. Motion to Strike "Legally Unsupportable Allegations".

DeFabritus moves to strike allegations in the indictment that relate to his failure to declare as income the value of a house he now owns that was allegedly built for him by his employer, ARC.[1] DeFabritus contends that he purchased the home at its appraised value and that the money and services provided by ARC to build the house were interest free loans. In support of this contention, DeFabritus cites a loan agreement with ARC, which was executed on August 17, 1981, three years after construction of the house had begun and eight months after the issuance by the Town of East Hampton of the house's certificate of occupancy. Under the loan agreement DeFabritus acknowledged a debt to ARC in the amount of $265,000.00, the appraised

value of the house, for construction of the house. The agreement also provided that in consideration of DeFabritus's continued service for ARC, ARC would allow DeFabritus additional time to repay the "loan." DeFabritus also cites a written agreement entered into October 15, 1981, in which DeFabritus acknowledged an indebtedness of $165,000.00 to ARC's Pension Trust. DeFabritus states that the "facts are essentially undisputed between the parties" and that as a matter of law the acts as alleged in the indictment are not unlawful.

■ The government, however, presents a somewhat different factual background than that of the defendant. The government contends that the house, furniture and garden constitute concealed compensation to DeFabritus for which there was no intention to "repay" prior to the commencement of the investigation by the IRS into the financial affairs of ARC and its senior employees in the summer of 1980. The government contends that the 1981 "loan" agreements between ARC and DeFabritus were drafted after and in response to the commencement of the criminal investigation, and that prior to the execution of these agreements there is no evidence of any intention by DeFabritus to repay ARC for the construction of the house. Moreover, the government contends that the house did not take three years to complete, but was substantially completed and in periodic use by the defendant during the summer of 1979.[2]

■ There is sufficient probable cause of criminal liability under the government's version of what the defendant characterizes as a loan. Therefore, the court cannot strike these allegations from the indictment; it is jury's role, not the court's, to determine if the facts, as they find them, support the charges in the indictment.

---

**1.** This motion affects the substantive counts, Two through Seven, and portions of Count One, the conspiracy count.

**2.** DeFabritus contends that the house did not constitute income to him until January of 1981 when the Town of East Hampton issued the

certificate of occupancy. The issue of when DeFabritus had dominion over the property alleged in the indictment, sufficient for the property to constitute income within the meaning of the income tax laws, is properly a jury question. *United States v. Dixon,* 698 F.2d 445, 446 (11th Cir.1983).

II. Dismissal of the Indictment based on erroneous admission of evidence to the Grand Jury.

DeFabritus moves to dismiss the indictment based on the admission of erroneous evidence to the Grand Jury, specifically, the evidence regarding the home discussed above. Aside from the more than $270,-000.00 of income attributable to the house, the indictment further charges that DeFabritus failed to declare approximately $25,-000.00 of taxable income which he obtained over a three year period. DeFabritus contends that because, as a matter of law, he had no tax liability with respect to the home, the "erroneous" introduction before the Grand Jury of this $270,000.00 worth of undeclared taxable income irremediably prejudiced the Grand Jury. This motion is denied.

 A facially valid indictment cannot be attacked based on the sufficiency of the evidence presented to the Grand Jury in the absence of gross abuse or purposeful deception by the prosecutor. *Costello v. United States*, 350 U.S. 359, 363–64, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956); *see United States v. Hogan*, 712 F.2d 757 (2d Cir.1983) (dismissal of indictment because of prosecutorial misconduct). There has been no such showing in this case. In *United States v. Bari*, 750 F.2d 1169 (2d Cir.1984), the court stated that "[t]he admission of evidence within the realm of colorable relevance is not misconduct calling for the extreme remedy of dismissal of the indictment even if the prejudicial effect of such evidence outweighs its probative value." *Id.* at 1177.[3]

 The evidence regarding the home was clearly relevant and does not provide a basis to dismiss the indictment. Further, it is not clear that the admission of the evidence was "erroneous." The characterization of the admission of this evidence as "erroneous" is based on the motion to strike the allegations pertaining to the home transaction as "legally unsupportable." This motion is denied for the reasons stated above. There is sufficient "probable cause" to support the government's contentions regarding the house to uphold the indictment.

Finally, the defendant assumes that the indictment must be dismissed if the court agrees with his version of the home transaction. The court, however, cannot assume that if the Grand Jury had not heard the evidence regarding the house, it still would not have indicted DeFabritus for not declaring approximately $25,000.00 of taxable income over a three year period, which saved DeFabritus $9,800.00 in taxes that would have been due and owing.

III. Motion to dismiss based on improper venue.

DeFabritus moves to dismiss various counts of the indictment based on improper venue. The government does not oppose the motion with regard to Counts Five and Six. Therefore, Counts Five and Six of the indictment are dismissed without prejudice to seeking an indictment in the proper venue.

 Defendant asserts that the Southern District of New York is the improper venue for all but two of the remaining counts of the indictment.[4] Counts Two, Three and Four allege income tax evasion in violation of 26 U.S.C. § 7201. DeFabritus contends that on a charge of attempted evasion, venue lies where the tax return was prepared, signed or filed. Because the returns charged in Counts Two and Three were neither signed, prepared or filed in the Southern District, DeFabritus contends that venue in this district is improper. The act of attempted evasion, however, consists not only of the preparation and filing of the

---

3. In examining the evidence presented to a grand jury, the court is not bound by the same rules that apply to the introduction of evidence at trial. For example, the court in *Bari*, held that Rule 403 of the Federal Rules of Evidence which permits a court to exclude evidence if the probative value is substantially outweighed by the danger of unfair prejudice does not apply to grand jury proceedings. 750 F.2d at 1177.

4. Defendant concedes that venue is proper for the counts relating to the 1980 tax return. Memorandum of Law in Support of Motion at 15. Counts Four and Seven involve the 1980 return.

return, but the preparation of the underlying documents supporting the return. Venue is proper "wherever the attempt to evade taxes was begun, continued, or completed." *United States v. Slutsky*, 487 F.2d 832, 839 (2d Cir.1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974). The alleged acts regarding the false petty cash vouchers which are part of the attempted evasion alleged are therefore part of the attempt charged. Where the evasion charge is based on the making of false records, proper venue for an evasion charge includes the district in which the corporation maintaining those records has its principle place of business. *Beaty v. United States*, 213 F.2d 712 (4th Cir.1954), *vacated mem.*, 348 U.S. 905, 75 S.Ct. 312, 99 L.Ed. 710 (1955) (vacated for re-examination in light of "net worth decisions" in *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), *Friedberg v. United States*, 348 U.S. 142, 75 S.Ct. 138, 99 L.Ed. 188 (1954), *Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954), and *United States v. Calderon*, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954)). These acts concerning the petty cash vouchers, which are alleged to have occurred in this district, establish a sufficient basis for venue in this court for the charges of attempted evasion of income tax.

 Defendant contends that under the provisions of 18 U.S.C. § 3237(b), he may elect to be tried in the district where he resides, in this case, the Eastern District of New York. Section 3237(b), however, applies only to offenses involving "use of the mails." The allegations in Counts Two, Three and Four, the evasion counts, do not involve "use of the mails" within the meaning of Section 3237(b). In *In re United States (Clemente)*, 608 F.2d 76 (2d Cir.

1979), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980), the court held that Section 3237(b) applies "at most, to tax prosecutions that involve the use of the mails in the sense that a mailing, whether or not alleged in the indictment, is the basis on which the prosecution seeks to establish venue in a district other than the taxpayer's district of residence." *Id.* at 81. In this case, as in *Clemente*, "the Government does not rely on the mailing of any item to establish venue in a district other than the taxpayer's district of residence," *id.* at 81 n. 7. Accordingly, because the government will attempt to show at trial that DeFabritus attempted to evade taxes in the Southern District of New York, venue is proper.[5]

 Defendant "recognize[s] that the law in this circuit is not consonant with [his] position," however he asks the court to depart from the holding in *Clemente* because it was "based on an erroneous reading of the plain terms of § 3237 and its legislative history and because it has been roundly criticized by commentators and rejected by every other court." Memorandum in Support of Motion at 17 n. *. This court, however, is bound by the law in this circuit. *United States v. Posner*, 549 F.Supp. 475, 476–77 n. 1 (S.D.N.Y.1982) (following *Clemente* rule). Moreover, the defendant's assertions regarding the criticism of *Clemente* are not accurate. Although it is a minority view, the holding in *Clemente* has been adopted by the Fourth Circuit, *see In re United States (Nardone)*, 706 F.2d 494, 496 (4th Cir.), *cert. denied*, — U.S. ——, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983); *United States v. Dorison*, 573 F.Supp. 809, 811 (S.D.W.Va.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 2346, 80 L.Ed.2d 819 (1984), and supported by at least one commentator, Note, *Transfer of Venue in Income Tax Prosecutions: 18 U.S.C. § 3237(b)'s Use of the Mails Requirement*, 53 Fordham L.Rev. 937 (1985).[6]

---

5. Venue is proper with respect to Count Seven because the return was prepared in the Southern District of New York.

6. The commentator advocates adoption of the *Clemente* view, provided the defendant has some "minimum contact" with the government's chosen forum. Although this is not the law of this circuit, even under this approach the government has alleged sufficient contacts with

the Southern District of New York to meet the "minimum contacts" test. The government alleges that "[a]mong other things, DeFabritus' false petty cash vouchers in each of the three years were made and submitted at Arc's offices in New York." Government's Memorandum at 14–15. Defendant's contacts with the Southern District of New York are certainly "more than negligible."

The court agrees with the reasoning in *Clemente*, in that it "is faithful to the result intended by Congress, but avoids the judicial inefficiency and duplicative proceedings that would be the inevitable result of a broader interpretation" of Section 3237(b), *Nardone, supra,* 706 F.2d at 496.

▬▬▬▬ Counts Eight, Nine and Ten allege that DeFabritus aided and assisted in the filing of false corporate tax returns, in violation of 26 U.S.C. § 7206(2). Venue for the charge of aiding and assisting in the preparation and presentation of fraudulent income tax returns is the same as for the predicate charge of preparation and presentation of the return. *United States v. Kelley,* 105 F.2d 912 (2d Cir.1939). The alleged acts of aiding and assisting which consist of the payment of petty cash from ARC took place in the corporate offices of ARC in Manhattan. These acts are sufficient to place venue in this district.[7]

IV. Multiplicity.

▬▬▬▬ DeFabritus contends that Counts Five through Seven, charging filing of a false return for a particular year and Counts Two through Four, charging attempted evasion of income tax for that same year are multiplicitous and therefore must be dismissed.[8] A defendant may be charged with two crimes even though both arise from the same facts. *See United States v. Lodwick,* 410 F.2d 1202 (8th Cir.), *cert. denied,* 396 U.S. 841, 90 S.Ct. 105, 24 L.Ed.2d 92 (1969). Even though both offenses may arise from the same occurrence, the elements necessary to prove the two crimes differ. The lesser included offense, however, will be dismissed "[i]f there is no factual dispute concerning an element which distinguishes the offenses." *United States v. Harary,* 457 F.2d 471, 478 (2d Cir.1972). The court, therefore, will consider dismissing the lesser included offense only if the defendant enters into a stipulation with the government regarding the elements that distinguish the two offenses. This is the only way the court can be assured that there is no factual dispute as required by *Harary.* In the absence of a stipulation, the court cannot make a determination regarding the facts of this case until evidence has been presented at trial. Only at that time can a decision be made regarding the dismissal of any of the counts based on multiplicity. *See United States v. Klein,* 474 F.Supp. 1243, 1246 n. 6 (S.D.N.Y.), *aff'd mem.,* 614 F.2d 1292 (2d Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 853 (1980).

V. Preindictment Delay.

DeFabritus moves to dismiss the indictment based on a violation of his constitutional right to due process caused by the delay in seeking an indictment. The indictment concerns violations of the tax laws for returns for the years 1978, 1979 and 1980. The indictment was filed on February 26, 1985.[9]

Defendant admits that he has a "large burden" in moving to dismiss the indictment based on preindictment delay. Memorandum in Support of Motion at 21. In attempting to satisfy this burden, the defendant contends that he will suffer extreme prejudice in the preparation of his case because of the length of the delay in seeking an indictment. While "proof of prejudice is generally necessary" to a due process claim, a due process inquiry must also consider the reasons for delay. *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). The question is "whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and

---

**7.** The defendant has moved to dismiss Count One, the conspiracy count, based on improper venue. The defendant fails, however, to address Count One in his memorandum. Based on the above analysis, the Southern District of New York is the proper venue for the conspiracy charge.

**8.** As noted above, Counts Five and Six are dismissed. Therefore, defendant's motion with respect to the multiplicity of these counts is moot. Count Seven is arguably duplicitous only with Count Four.

**9.** The statute of limitations for tax violations is six years from the filing of the return. The indictment was filed within this period.

which define 'the community's sense of fair play and decency'." *Id.* (quoting *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935) and *Rochin v. California,* 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952)).

The government contends that in order to gain a dismissal of the indictment, the defendant must demonstrate that the delay was intended "to gain tactical advantage over the accused," *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). The defendant, on the other hand, contends that a delay brought about by negligence on the part of the prosecutor is sufficient to warrant dismissal.

■ It is unclear whether prosecutorial negligence is sufficient to require dismissal of an indictment. In *United States v. Birney,* 686 F.2d 102 (2d Cir.1982), the court specifically declined to express an opinion on this issue. *Id.* at 105 n. 1. Other than this reference, this court has not found a single case which bases a decision to dismiss an indictment on mere prosecutorial negligence. While at least one court has considered prosecutorial negligence in its decision to dismiss an indictment, *United States v. Townley,* 665 F.2d 579, 586 (5th Cir.) (prosecutorial overload and insufficient personnel, if coupled with substantial prejudice, may be entitled to slight weight in finding a deprivation of due process), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982), this is certainly a minority view.[10] This court will not join this minority and would require a showing of improper motive to dismiss the indictment. The defendant has not offered any evidence of such motive. Under these cir-

cumstances, the court does not find that the fundamental conceptions of justice which define the community's sense of fair play and decency have been violated. The motion to dismiss the indictment based on due process considerations is denied.

## VI. Striking Certain Language from the Indictment.

■ Defendant moves to strike a number of terms from the indictment. In order to grant a motion to strike surplusage from an indictment, it must be clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. *United States v. Kemper,* 503 F.2d 327, 329 (6th Cir.1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975); *United States v. Pilnick,* 267 F.Supp. 791, 802 (S.D.N.Y.1967). The standard is exacting. *United States v. DePalma,* 461 F.Supp. 778, 797 (S.D.N.Y.1978). Each statement that the defendant claims is surplusage will be addressed individually with regard to this standard.

■ The indictment contains the phrase "slush fund." Specifically, the indictment states: "It was a further object of this conspiracy for Arc to maintain false books and records to create a "slush fund" for the benefit of William Callahan (now deceased), and to be otherwise made use of as certain executives saw fit." Indictment ¶ 17. The indictment may properly include any allegation that is "relevant to the case and will constitute part of the government's proof at trial." *United States v. Esposito,* 423 F.Supp. 908, 911 (S.D.N.Y. 1976). The evidence regarding the secretive accumulation of cash would be proba-

10. Were the court to adopt the negligence standard, the outcome would not be altered. The defendant has not demonstrated actual prejudice resulting from the delay in seeking the indictment. DeFabritus contends that the only person other than he who was involved in any discussion relating to the purchase of the house was William Callahan, Sr., who died in 1981. Any prejudice resulting from the loss of this witness, however, is not due to the government's delay. Even if the government had indicted defendant three years ago, Callahan would not have been alive to testify in this matter. More-

over, defendant's contention that he will have difficulty remembering the events reflected in cash vouchers signed in 1973 and 1974 is equally unavailing. He would have had the same difficulty in remembering such facts even if the indictment had been filed in 1982, a time when even defendant would have to concede that there was no wrongful pre-indictment delay. *See United States v. Carruth,* 699 F.2d 1017, 1019–20 (9th Cir.), *cert. denied sub nom., Reed v. United States,* —— U.S. ——, 104 S.Ct. 698, 79 L.Ed.2d 164 (1983).

tive of a scheme to avoid the payment of taxes and is thus properly included in the indictment. While there are words less prejudicial than "slush fund" that may be used to characterize the alleged accumulation of cash, the court does not have broad powers to amend an indictment by changing the wording of the indictment, *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). The words "slush fund," therefore, will not be striken from the indictment.

■ The defendant objects to the use of the words "among other things" and "at least" in the indictment.[11] The words "among others" have been stricken from an indictment where they serve no useful purpose and allow the jury to draw the inference that the defendant is accused of crimes not charged in the indictment. *United States v. Brighton Building & Maintenance Co.*, 435 F.Supp. 222, 230 (N.D.Ill.1977), *aff'd*, 598 F.2d 1101 (7th Cir. 1979); *see also United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir.1980) (reference in indictment to particular events that "included, but were not limited to, the following" should have been treated as surplusage), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981).

These cases are pursuasive with regard to the words "among other things" in paragraphs 18(a) and 18(e) of the indictment. This language does not add anything to the charges in the indictment and would lead the jury to draw improper inferences regarding other crimes not charged in the indictment. The words "among other things" are therefore to be stricken from paragraphs 18(a) and 18(e) of the indictment. By striking this language, the court in no way forecloses the government from presenting any proof relevant to the charges at trial. *See United States v. Pope*, 189 F.Supp. 12, 26 (S.D.N.Y.1960).

■ Defendant also moves the court to strike the term "Executive" in Count One, paragraph one, because DeFabritus is only a vice-president of the corporation. The court finds nothing inherently prejudicial, inflammatory or misleading in the term "Executive," as applied to the charges in the indictment and will therefore not strike this term from the indictment.

■ Defendant also objects to the government's repeated use of the term "now deceased" in referring to William Callahan. Mr. Callahan was murdered in 1981 and his death remains unsolved. Defendant contends that the repeated use of the term "now deceased" "is bound to suggest to the jury that there is something in his death which is relevant to the defendant's guilt in this case." Memorandum in Support of Motion at 28. The court does not agree. Defendant does not dispute the government's right to refer once to the fact that Callahan is dead. *Id.* For clarity's sake it is appropriate that his death be referred to whenever his name is mentioned in the indictment. Moreover, the government has stated its believe that defendant was in no way responsible for Callahan's death and that it would not object to the court so instructing the jury. Government's Memorandum at 24, n. *.

## VII. Bill of Particulars.

■ The government has responded to all but three of the defendants Bill of Particulars. It is within the discretion of the trial judge to determine whether a bill of particulars must be filed and its scope. *United States v. Cohen*, 518 F.2d 727 (2d Cir.), *cert. denied*, 423 U.S. 926, 96 S.Ct. 270, 46 L.Ed.2d 252 (1975). That discretion must be informed, however, by certain well established considerations: whether the re-

---

**11.** The indictment states:
　　Rather, the corporate monies were used, among other things, for the construction and improvement of personal residences and for the benefit of themselves and others.
　　Indictment ¶ 18(a).
　　[T]he defendant and his co-conspirators thus concealed, among other things, the true nature of the payments and their own tax liabili-

ty for the monies they received by aiding and assisting in the preparation of false corporate tax returns.
Indictment ¶ 18(e).
　　The bogus petty cash vouchers prepared and submitted by the defendant … total at least $25,000.
Indictment ¶ 18(d).

quested particularization is necessary to a defendant's preparation for trial and the avoidance of unfair surprise at trial. *United States v. Kendall,* 665 F.2d 126 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982). It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government need not be required to disclose additional details about its case. The court must be cognizant of the fact that a bill of particulars confines the government's evidence at trial to the particulars furnished. *United States v. Boffa,* 513 F.Supp. 444, 484–85 (D.Del. 1980). "Thus, the court is required to balance restricting the Government's proof against protecting defendants from suprise." *Id.* at 485. Based on these considerations, the outstanding requests for particulars are denied.

The defendant seeks a list of the petty cash vouchers which the government will claim DeFabritus did not report as income. The government has asserted that the defendant has been provided with access to all vouchers that will be offered at trial pursuant to Rule 16 of the Federal Rules of Criminal Procedure. This disclosure is sufficient to permit the defendant to prepare for trial and the request is therefore denied.

The defendant also seeks a list of all overt acts not listed in the indictment. A defendant does not ordinarily "need" detailed evidence of the conspiracy to prepare for trial. *United States v. Wilson,* 565 F.Supp. 1416 (S.D.N.Y.1983). The indictment lists twenty-six overt acts; this information will surely permit the defendant to prepare adequately for trial. This request clearly constitutes an attempt to discover the government's case at trial and will not be permitted. *See United States v. Hilliard,* 436 F.Supp. 66, 76 (S.D.N.Y.1977).

Finally, the defendant seeks disclosure of "any statement by any coconspirator which the government intends to offer at trial as a coconspiratorial admission by the defendant under Fed.R.Evid. 801(d)." Memorandum in Support of Motion at 30. This request is denied. Certain statements of co-conspirators made during the course of the conspiracy are discoverable under Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure. *United States v. Turkish,* 458 F.Supp. 874 (S.D.N.Y.1978), *aff'd,* 623 F.2d 769 (2d Cir.1980).[12] The court will not impose disclosure beyond that required by Rule 16. The indictment and the discovery made to the defendant thus far adequately apprise the defendant of the charges against him so that he can prepare his defense.

### CONCLUSION

The defendant's motion to dismiss the indictment based on legally unsupportable allegations, Grand Jury prejudice, preindictment delay and multiplicity are denied. The motion for a bill of particulars is denied in all respects. The defendant's motions to strike surplusage from the indictment and to dismiss counts based on improper venue are granted in part and denied in part. Counts Five and Six are hereby dismissed without prejudice.

---

**12.** Rule 16 requires discovery only if the statements are written or recorded or if the statements are made in response to interrogation by a person known by the declarant to be a government agent and the government intends to offer the statement in evidence at trial.